MOBILE & O. R. Co. *et al. v.* JOHNSON.

(Division B.   March 17, 1930.   Suggestion of Error Overruled May 19, 1930.)

[126 So. 827.   No. 28417.]

**W. C. Sweatt** and **Ely B. Mitchell**, both of Corinth, for appellants.

268

E. C. Sharp, of Jackson, and **J. A. Cunningham** and **F. W. Cunningham**, both of Booneville, for appellee.

Argued orally by **Ely B. Mitchell**, for appellant.

**Griffith, J.**, delivered the opinion of the court.

At or near the unincorporated village of Leedy, in Tishomingo county, about ten-thirty on the morning of December 25, 1928, appellee's decedent, James L. Johnson, while going southward and driving a small touring car, with all the curtains up, attempted to cross the railroad tracks immediately in front of a rapidly

moving east-bound freight train, and was instantly killed. Suit was instituted, and a verdict was returned and judgment entered against the railroad company for ten thousand dollars; hence this appeal.

Three grounds of negligence were alleged against the railroad company: That the public crossing where the injury occurred was constructed and maintained by the railroad company in a dangerous and negligent manner, that the statutory signals by the sounding of the locomotive whistle and the ringing of the bell were not given, and that the railroad company failed to exercise the precaution of a proper lookout upon approaching said crossing.

Touching the first point, the testimony was so overwhelming against the contention of appellee that the trial judge properly directed the jury that no verdict could be based on that allegation.

On the second point, eight of the eleven witnesses introduced by appellee testified that the signals by the whistle were given, to which is to be added the testimony of every one of the five witnesses for defendant, making thirteen out of sixteen witnesses who stated affirmatively that the signals by the steam whistle were given. The other three did not swear positively that the whistle was not sounded, but that they did not hear or did not remember, or did not notice in that regard. It must be accepted, therefore, as overwhelmingly shown, that the signals of the whistle were given. These whistle signals, however, were not continuous, and we must therefore inquire whether the bell was kept ringing for the statutory distance.

Two of the eleven witnesses for appellee said they heard neither the bell nor the whistle, but, it being established beyond a peradventure that the whistle was sounded, this eliminates these two witnesses. Three of appellee's witnesses testified affirmatively that the bell was ringing, and all five of appellant's witnesses swear likewise. As against these eight affirmative witnesses, the remaining six witnesses for appellee say they heard

no bell. The first one of these said that he did not hear the bell, but would not undertake to say it was not ringing —that he did not know; the second witness, that she did not hear the bell, but that she would not assume to declare that it was not ringing—that she did not remember it; the third, that he did not notice about the bell, and did not hear any.; the fourth, that he did not remember about a bell; the fifth, that he had no recollection about the bell; and, the sixth, that she paid no attention to the bell—did not notice it. Two of these witnesses were at a store about three hundred feet, one at a drug store, two others at other stores, these from two hundred to three hundred feet, and one was at home about two hundred feet, distant, and all were variously engaged, but nevertheless did observe that a train was passing.

Other than the three on the locomotive, the one witness who was in the nearest and best position to make distinct and impressive observation and to speak with actual knowledge and best remembrance was a young man who was at the little depot, located about five hundred feet from and to the west of the crossing. This witness testified that the bell was ringing when the train passed the depot and continued to ring. The engineer and the fireman, as well as the head brakeman who was on the locomotive, testified that the bell was set ringing at the crossing signal post, which is one thousand two hundred and forty-two feet from the crossing. The bell operated automatically by air pressure, and would necessarily continue thus to operate until the air valve was turned to cut it off. As stated, eight witnesses testified affirmatively that the bell was ringing, and, since the purpose in setting it to ring was to continue its operation until the crossing was reached, there could be no sort of reason for taking the untimely trouble of an affirmative action to cut it off earlier, or to believe that such was done. The inquiry thus narrows to the point whether the affirmative testimony of the eight witnesses that the bell was ringing was sufficient in weight to overwhelm the negative testimony of the six witnesses who were at a

distance of from two hundred to three hundred feet, and who generally say they did not notice as to the bell.

Negative testimony rises or declines in the scale of probative weight according to the opportunity of the negative witnesses to hear and observe; whether their attention was directed to or diverted from the fact in issue; whether the particular fact was an unusual or only a general or common occurrence in the daily routine of their lives; whether the particular witness was normal in sense of hearing and sight; and whether observant or indifferent to details. So varied are the circumstances of the cases in these and in other intimately related respects that it has been the common course in this court to leave such questions in full measure to the determination of the jury, and this rule has been equally applied to this particular class of cases. See Columbus & G. R. Co. v. Lee, 149 Miss. 543, 115 So. 782, and cases therein cited. Nevertheless, it has also been distinctly recognized that in these cases, as in others, there must be a limit, a point where the decisive duty of the court begins, as for instance, see Mobile & O. R. Co. v. Bennett, 127 Miss. 413, 90 So. 113, and cases therein cited.

The question is, therefore, whether the case here is such that the court is required to apply the rule, sometimes generally stated thus: "The testimony of witnesses that they did not hear the ringing of the bell on a locomotive as it approached a crossing, without proof that the witnesses listened for the bell, or that their attention was in any way directed to it, or that they probably must have heard the bell if it did ring, cannot prevail against the positive testimony of other credible witnesses that the bell did ring at the time in question." Foley v. N. Y. C. & H. R. R. R. Co., 197 N. Y. 430, 90 N. E. 1116, 18 Ann. Cas. 631; 10 R. C. L., p. 1011; 9 Ency. Ev. pp. 867, 868; 23 C. J. pp. 42-45; Jones on Evidence (Civil Cases, 3 Ed.), sec. 898; 2 Moore on Facts, secs. 1188, 1189; 3 Elliott on Railroads (3 Ed.), pp. 523, 524.

Upon all these authorities, we incline to the opinion that on this record we have a case within the rule as thus

generally stated. But it is not necessary here to definitely decide that issue, because enough of it has been mentioned to demonstrate that the evidence on the point, to say the least of it, strongly preponderates against the contention of appellee. It is to be assumed, therefore, that the verdict was not based on a finding against this strong preponderance; and thus the conclusion follows that the verdict must have been based upon the third charge in the declaration; namely, that there was negligence in the matter of keeping and effectuating a proper lookout.

The testimony shows that this east-bound freight train, as it approached this flag station, pursued the usual course, which was, that at a suitable distance the steam was cut off or reduced, and the train allowed to slow down to some extent until the whistle board was reached, when, in response to the customary sound of the whistle, the semaphore at the station showed clear or the reverse. If clear, the train would immediately proceed under steam; otherwise it would stop at the station. If the board shows clear, the head brakeman, if on the locomotive at the time, must go partly down upon the steps of the engine next to the depot and catch the train orders, if any, as the locomotive passes. On this occasion, the semaphore signaled clear, and, when that happened, the steam was reapplied, the fireman, as was his duty, got down in the pit, and began refueling his fire, and the head brakeman went on the steps to the south of the engine, the depot being on the south side. The locomotive boiler protruded ahead of the engineer about fifty feet, cutting off his view on the opposite or north side except as to objects some distance ahead. The train was then running from thirty-five to forty miles per hour. The deceased as he approached the crossing was driving at the rate of approximately fifteen miles per hour. All the witnesses who saw him agreed as to this, and that he drove past the statutory stop sign and upon the right of way and on to the crossing without slackening his speed—and to all appearances was utterly unaware of the train.

The engineer testified that he saw the radiator of an automobile going south suddenly protrude within his range of vision around the head of the locomotive boiler when the locomotive was at a point just east of the toolhouse, which house is two hundred seventy-two feet west of the crossing; that he (the engineer) had until then been blowing the whistle, but immediately quitting the whistle, and, as quickly as he could possibly do so, he shut off the steam and turned on the sand with one hand and with the other set the emergency brakes. This is convincingly corroborated by several of the witnesses, and disputed by none in this, that the whistle suddenly ceased blowing at a point near the toolhouse. The fireman was shown to have got back to his place, from his fires, about the time or just after the toolhouse was reached, and at about the instant the engineer first saw the approaching automobile and took the actions mentioned.

But there was testimony from which it could be inferred that the head brakeman got back up into the cab some five hundred feet from the crossing; that is to say, at a point near the depot. The brakeman himself was not very clear about this, and one witness testified that about at this point one of the men in the cab waved to this witness, and it was argued that this must have been the head brakeman, and that, if thereupon he had been keeping a lookout ahead instead of waving to people on the side, he could have seen the danger and warned the engineer in time to avert the accident, and the consequent death.

In pursuance of this theory—which the course of the examination of the witnesses and the course of the brief here discloses was strongly urged before the jury—appellee obtained the following three instructions:

"The court charges the jury for plaintiffs that if you believe from a preponderance of the evidence that the defendants' conductor or head brakeman on said engine were looking ahead as Johnson approached the track and that such employee saw, or by the reasonable exercise of

prudence should have seen plaintiffs' decedent, James L. Johnson, approach the public crossing in an automobile on their right of way, and had reasonable grounds to apprehend as prudent men that he might pull upon the track ahead of the engine unaware of their approach, then it was the sworn duty of such employees to promptly ring the distress signal and make every reasonable effort to avert the collision between the train and the said Johnson, and if you believe from a preponderance of the evidence that they negligently failed to do so and such negligence proximately contributed in whole or in part to the injury and death of plaintiffs' decedent, then it is your sworn duty to render a verdict for the plaintiffs.''

''The court charges the jury for the plaintiffs that if employees of the defendant company were in the cab and on the lookout it was their duty to exercise all reasonable diligence to see and observe any person approaching their railroad track for a distance back of fifty feet east from the stop sign, and if you believe from the evidence that said employees saw Johnson approaching said crossing in a position of serious peril somewhere between the stop sign fifty feet east of and the railroad track and failed to promptly sound the alarm signal and make every reasonable effort to stop the train before reaching him and coming into a collision and such negligence proximately contributed in whole or in part to the injury and death of plaintiffs' decedent, then it is your sworn duty under the law to render a verdict for the plaintiffs, and this is the law even though you may believe plaintiffs' decedent, James L. Johnson, was neggent in approaching the crossing the way he did.''

''The court charges the jury for plaintiffs that in passing on the question of whether the employees or any of them on the engine saw, or by the exercise of reasonable care could have seen, Johnson approaching the crossing in a position of imminent peril in time to have sounded an alarm signal and prevented this accident is a matter that you have a right to determine from the circum-

stances and situations of the parties as in your sound judgment is shown by a preponderance of the evidence."

It will at once be seen from these instructions that the jury was told, in substance and effect, that the railroad company would be liable if the said head brakeman failed to keep a lookout. No authority is cited for this proposition, and, upon a diligent search, we find none sustaining it. This is a duty that is imposed by law on the engineer, and, when not busy with his fires, also on the fireman, but not on a brakeman, whose duties do not appertain to that care. The exact point in principle is discussed and decided in Louisville & N. R. R. Co. v. Creighton, 106 Ky. 42, 50 S. W. 227. Compare Howard v. Louisville, etc., Ry. Co., 67 Miss. 247, 7 So. 216, 19 Am. St. Rep. 302; Illinois Cent. R. Co. v. Williams, 144 Miss. 804, 110 So. 510. It is true that the head brakeman overgarrulously had something to say in his testimony which may be interpreted as committing him, in his opinion, to the duty of a lookout, but, as already said, these are obligations that are fixed and prescribed by law, and it would manifestly be no more competent for a brakeman to enlarge these obligations against the employer railroad company by opinions of this sort than it would be competent for the engineer to absolve his employer by his individual opinion that his duties as a lookout were less than those prescribed by law. There are circumstances of fact when a brakeman may and will have the duties of a lookout, as, for instance, when acting as a flagman, he is placed to guard a crossing or to protect a train while stalled, or the like, Jamison v. Railroad Co., 63 Miss. 33, but not on the engine, running in regular course, under the charge of an engineer and fireman, unless expressly directed and charged to keep a lookout for the time being, and there is no claim that any such case existed here. Again, if a brakeman who is for the time being on a locomotive actually sees a person in definite danger, his duty would be to immediately notify the engineer, but no proof is made here that the brakeman did see

the decedent; the contention is that it is sufficient that he ought to have seen him.

It is to be observed also that these instructions are capable of the construction that it was the duty to maintain a lookout beyond the right of way and to anticipate that a person traveling in proximity thereto would, without taking any precaution in his own behalf, drive suddenly upon the track. A large part of the railroad mileage in this state is skirted on one side or the other by highways with numerous crossings, leading therefrom. It is enough to say, without more, that, if this character of lookout were required, there would be, in order to avoid possible liability, an intolerable recurrence of the throwing on of emergency brakes and an inadmissible interference with the efficient movement of the commerce of the country.

Reversed and remanded.