ILLINOIS CENTRAL RAILROAD COMPANY *v.* SMITH, et al.

No. 42284　　　　May 14, 1962　　　　140 So. 2d 856

*Keady, Campbell & DeLong,* Greenville; *Joseph H. Wright, John W. Freels, Wence F. Cerne,* Chicago, Ill., for appellant.

768

*Smith, O'Hare & Boykin, Jacobs, Griffith & Hatcher, Alexander, Feduccia & Alexander,* Cleveland, for appellees.

McGehee, C. J.

The appellee, Mrs. Marjorie M. Smith, suing on behalf of herself and four minor children, filed this suit in the Circuit Court of Bolivar County for damages

because of the death of her husband, A. B. Smith, Jr., which occurred December 13, 1960, at about 11:05 a.m. when he drove his Plymouth station wagon in front of a moving Illinois Central train crossing state highway No. 8 in Rosedale, Mississippi. The appellant, Illinois Central Railroad Company, and its engineer, S. S. Buck, were named as the co-defendants. The suit was for $302,400 and of which amount the sum of $2,400 was claimed by the plaintiffs as the value of the 1960 station wagon which was struck in the collision at the railroad crossing at which A. B. Smith, Jr., an attorney 31 years of age, was killed. The trial judge properly held that the title of the station wagon was vested in the estate of the deceased, as personal property of which he died seized and possessed. At the conclusion of the trial of the case, during which many witnesses had testified, the jury returned a verdict in favor of the plaintiffs for the sum of $30,000 as against the defendant, Illinois Central Railroad Company but did not render a verdict against the engineer, S. S. Buck, who controlled the speed of the train and the giving of the signals. From the judgment, the Illinois Central Railroad Company prosecutes this appeal.

The proof disclosed that on the occasion of the accident, which was on a cool and windy day, the decedent was driving westward on state highway No. 8 and that he undertook to cross the railroad track at a point where the line of railroad ran in a northwesterly and southeasterly direction. The train consisted of a diesel engine, a caboose and one boxcar. This train was traveling from Leland to Rosedale and was within the corporate limits of the City of Rosedale at the time of the collision. The City of Rosedale is the terminal point of this line of railway. No passenger trains operate over this section of the line, and there is one freight train per day except on Sundays and on certain holidays. The train had no particular time of arriving at

Rosedale; some days it arrived during the forenoon and on others during the afternoon.

The declaration charged that the view of a motorist toward the south, when approaching this crossing from the east, was obscured or obstructed to a certain extent, and that on the occasion of the collision, the train was traveling at a high and dangerous rate of speed and that there was a failure to ring the bell or blow the whistle and to maintain a proper lookout for those approaching the crossing.

There is no point made on this appeal as to whether or not the bell was rung or the whistle blown, all of the competent testimony being to the effect that the whistle did blow. The five members of the train crew, consisting of the engineer and fireman in the cab, and three others in the caboose, all testified that the whistle signal was blown, and there were eight disinterested witnesses in the area who were used as witnesses at the trial and five of them testified unequivocally that they heard the whistle blowing, and the remaining three outside witnesses testified that they would not say that the whistle did not blow but that they would say that they did not hear it. They did not testify that they were listening for the whistle or that their attention was otherwise called to the fact as to whether or not the whistle did or did not blow. In other words, their testimony was negative as against the affirmative and positive testimony of the five members of the train crew and five of the outside and disinterested witnesses who said that they heard the whistle blowing, some of them stating that they heard it several times.

The testimony of a civil engineer introduced by the plaintiffs, and one introduced by the defendants, was to the effect that the decedent had an unobstructed view of the crossing as he approached it from the east for a distance of at least 382 feet, and that he also had an unobstructed view of the approaching train of from

350 to 400 feet in a southeasterly direction, from which the train was approaching. Then, too, there were 44 photographs and two plats introduced which supported their testimony. One of these two civil engineers testified that when 216 feet east of the crossing—the direction from which the decedent was approaching—the visibility of the motorist was good for one-fourth of a mile toward the south and the civil engineer who testified for the defendant said that from 350 feet east of the crossing, the decedent had an unobstructed view of the train for a distance of 420 to 425 feet to the south.

The pavement of the highway is twenty-two feet wide, and there was a sign marking the corporate limits of Rosedale 700 feet east of the crossing, the direction from which the decedent came, and there was a sign showing a speed limit of 35 miles per hour as he approached nearer the crossing. Then there was a railroad crossing warning sign thirty inches in diameter and located 500 feet east of the crossing. Then too, nearer the crossing was a standard "Mississippi Law Stop" sign, located 51 feet 4 inches from the centerline of the track, measured parellel to the highway. Photographs of these signs were admitted in evidence, as well as a panoramic photograph of the general area, taken December 22, 1960, and which demonstrate that this crossing was as much out in the open spaces as any other railroad crossing in the Delta or elsewhere in the state.

The proof showed without dispute that the decedent was familiar with the crossing in question, having traveled the highway in connection with his law practice in the county and in connection with a campaign which he had made for the office of district attorney. Frequently he used the crossing as often as once a week.

The locomotive involved was 14 feet 11⅝ inches high, over 56 feet long, and the train weighed 247,000 pounds.

It was a "general purpose" locomotive to be operated as conveniently when going backward as when going forward. The locomotive was equipped with a bell which weighed 48 pounds and was located on the short end of the locomotive. The locomotive was also equipped with a cluster type whistle operated by air, and located on the top of the locomotive, but as heretofore stated, no point is made as to whether or not the statutory signals were given.

Then, too, no error is assigned as to the giving or refusal of any instruction, the admission or exclusion of any testimony, but the appeal is based solely on the ground that there was no evidence to show that the defendant railroad company was guilty of any negligence whatsoever in connection with the crossing accident in which the decedent lost his life.

But it is contended that the fireman should have used his brake valve in the emergency instead of calling to the engineer "Hold it", when the fireman determined that the decedent intended to keep going toward and onto the crossing; that the fireman could have likely stopped the train quicker than the engineer was able to do but we think that the answer to this contention is that the fireman owed no duty to try to stop the train until it became evident that the decedent intended to proceed onto the crossing and disregard entirely his own safety. The fireman did not determine definitely that the decedent intended to try to make the crossing until it was too late for either he or the engineer to stop the train. The undisputed proof is that when the fireman exclaimed to the engineer to stop the train the latter reacted instantaneously and applied his automatic brake valve which the proof shows was all that could have been done. The automatic brake valve which was applied by the engineer was shown to have been about sixteen per cent more efficient than the fireman's brake. See

M. & O. Railroad Co. v. Johnson, 157 Miss. 266, 126 So. 827; M. & O. Railroad Co. v. Johnson, 165 Miss. 397, 401, 141 So. 582; M. & O. Railroad Co. v. Bryant, 159 Miss. 528, 132 So. 539; Brookhaven Lumber and Manufacturing Co. v. Illinois Central Railroad Co., 68 Miss. 432, 10 So. 66; Brown v. L. & N. Railroad Co., (5th Cir.), 234 F. 2d 204. We are of the opinion that the request of the defendant, Illinois Central Railroad Company for a directed verdict in its favor should have been granted.

We are confident that the decedent did not see or hear the approaching train when he drove upon the crossing; that if he had seen the train he would not have, of course, driven on the crossing ahead of the approaching train; and we think that the reason he did not see or hear the train in time to avoid the fatal accident was the fact that he was not looking or listening. ██ █ We do not think that there is any substantial evidence of negligence on the part of the defendant railroad company in this case but that the decedent's failure to look or listen for the train was the sole proximate cause of the collision of the train with his automobile, and, therefore, the sole proximate cause of his death.

We do not think that any good purpose could be served by reciting in detail the testimony of the numerous witnesses who testified in this case except to say that it is undisputed that the decedent was proceeding toward the crossing at approximately 50 miles per hour and that there is no evidence indicating that he ever applied his brakes or otherwise undertook to slacken the speed of his car. We think that the judgment appealed from should be reversed and judgment rendered here in behalf of the appellant, Illinois Central Railroad Company.

Reversed and judgment here for appellant.

*Lee, Arrington, Ethridge, Gillespie,* and *Jones, JJ.,* concur.

RODGERS, J., dissenting:

I am constrained to record my disagreement with the majority opinion in this case. I will not belabor the argument, because this Court has painstakingly and thoroughly examined every thesis offered or which I could now suggest in a dissenting opinion. It seems to me, however, that the evidence in this case presented a question of fact for the determination of the jury. I was particularly impressed with the testimony that the fireman saw that the deceased was approaching the crossing apparently unaware of the presence of the train, and that the jury had a right to believe that had the fireman used the brake valve within his reach he would have saved the life of the deceased. The fireman, however, had never been instructed with reference to the use of the brake valve and thought it was to be used only when the engineer dropped dead. There were other facts sufficient, in my judgment, to have required the submission of this case to the jury, but I will not make an issue of these facts here, because all of the facts have been resolved in favor of the defendant by the majority of the Court.

*Kyle* and *McElroy, JJ.,* join in this dissent.