334 So.2d 364 (1976)
ILLINOIS CENTRAL GULF RAILROAD COMPANY and Ricky Dowdy
v.
Mrs. Buford YATES.
No. 48632.
Supreme Court of Mississippi.
May 18, 1976.
Rehearing Denied July 13, 1976.
*365 Wells, Wells, Marble & Hurst, John E. Hughes, III, Jackson, for appellants.
Eugene C. Tullos, Raleigh, William D. Evans, Jackson, for appellee.
Before PATTERSON, SMITH and BROOM, JJ.
PATTERSON, Presiding Justice, for the Court:
Mrs. Buford Yates and her children brought suit in the Circuit Court of Smith County seeking damages for the loss of Buford Yates, their husband and father. His death resulted from a collision between the truck he was driving and a railroad locomotive. A verdict of $250,000 was awarded the plaintiffs by the jury from which the railroad company and Ricky Dowdy, the locomotive engineer, appeal.
The first error urged for reversal is that the overwhelming weight of the evidence establishes that the train's approach to the crossing where the collision occurred was preceded by warning signals in accord with the statute, leaving no factual issue for the jury to decide. To the contrary, the appellees urge the failure of the defendants to blow the locomotive's whistle and ring its bell in approaching the crossing, upon which they base liability, was supported by evidence sufficient to submit to the jury. The issue, therefore, is one of fact.
The defendant's duty to give warning of a train's approach to a crossing is set forth in Mississippi Code Annotated section 7777 (1942) [now Section 77-9-225)], which provides in part:
Every railroad company shall cause each locomotive engine run by it to be provided with a bell ... and with a whistle ... which can be heard distinctly at a distance of three hundred yards, and shall cause the bell to be rung or the whistle or horn to be blown at the distance of at least three hundred yards from the place where the railroad crosses over any public highway or municipal street. The bell shall be kept ringing continuously or the whistle or horn shall be kept blowing at repeated intervals until said crossing is passed.
A review of the testimony in some detail is necessary to a determination of whether there is any evidence to support the plaintiffs' theory of liability arising from the appellants' failure to give the crossing warning signals.
On August 18, 1973, at 6:30 a.m., an Illinois Central Gulf Railroad Company train left Cleveland, Mississippi, destined for Memphis, Tennessee. Prior to departure the air brakes of the train were examined and found to be in good working condition. The train did not stop on its northerly journey until it collided with the truck operated by Buford Yates in Shelby, Mississippi, some fifteen miles north of Cleveland.
U.S. Highway 61 and the tracks of the railroad run north and south at the collision site. The highway is east of the railroad and parallels it without curve for a substantial distance sought of the crossing. The terrain is level, permitting an unobscured view of the tracks from the highway south of the crossing and at the crossing site. On the day of the accident the plaintiffs' decedent was driving north along U.S. Highway 61 to a water tower construction site in Shelby where he was to obtain a load of equipment. The site was west of the railroad and the highway paralleled it to the east. It was thus necessary for the truck to turn left from the *366 highway onto the railroad crossing to reach its destination. As the truck and train proceeded on parallel courses in a northerly direction toward Shelby, the truck passed the train and turned westward into the crossing where it was struck by the appellant's locomotive. Yates was fatally injured and expired shortly after the collision.
Several witnesses testified for the locomotive engineer and the railroad company. Ricky Dowdy, the engineer, testified unequivocally that he blew the whistle and rang the bell beginning at the whistle post 900 feet south of the crossing. He explained that the bell rings continuously when activated and that he did not deactivate it until the locomotive had been brought to a stop subsequent to its impact with the truck. He also testified that he blew two long blasts of the whistle, several short blasts, and another long blast before the train reached the crossing near the water tower construction site. He did not observe the truck operated by Yates until after the accident as his vision to the east was blocked by the engine of the locomotive, his view being to the north along the tracks and to the west thereof.
Billy Barkley, the locomotive fireman, testified that he saw the truck as it moved northward along the highway east of the railroad track and that it passed the train. He estimated the truck's speed to be about forty or forty-five miles per hour and the speed of the train about thirty miles per hour. He also testified that when the train reached the whistle post, the engineer blew the whistle and rang the bell, giving warning of its approach to the crossing. After the truck passed the train, Barkley saw it turn left into the crossing and immediately notified the engineer who engaged the full braking power of the train, but it was too late to avoid colliding with the truck.
Robert Schnadelbach, a student of Delta State University, was traveling southward enroute to school on the occasion. While stopped at a traffic light in Shelby, he first saw the train and heard its whistle blow when it was about 300 yards south of the crossing. He continued his observance of the truck and train as they approached from the south and saw the truck turn left from the highway into the crossing without stopping where it was struck by the train's locomotive.
Charles Logan, a carpenter, testified that he was standing in front of Fava's Grocery Store in Shelby and saw the train and truck approaching from the south. He saw the train and heard the whistle blow when the locomotive was approximately a quarter of a mile south of the crossing. He also observed the truck turn directly into the crossing and into the path of the oncoming train.
Jim Jenkins was in front of his home in Shelby working on a school bus as the train approached. He heard the blasts of the train whistle and the bell clanging south of the crossing. He stated the whistle blew in the vicinity of a white house and pecan orchard south of the crossing. The exhibits depict the white house and orchard to be adjacent to the whistle post south of the crossing. He observed the truck enter the crossing without stopping before it was struck by the locomotive. At the time he was outside of the bus conversing with Reverend Giles who, according to Jenkins, could also have heard the whistle blow.
We note that each of these witnesses gave affirmative testimony that the train's whistle blew as it approached the crossing and were eye witnesses to the collision.
The evidence most favorable to the appellees by each of their witnesses follows.
Michael Martin was a welder on the water tower being constructed in Shelby. At the time of the collision he was approximately 200 feet from the crossing with his back to it when his attention was attracted *367 by the whistle blowing. He described it as follows:
Well, it was a strange whistle to me. It was almost a steady, you know, it wasn't no ordinary whistle. It was just a steady whistle like, you know, something to draw your attention, you know. That's what drew my attention was the  it was a strange whistle blow.
He stated the whistle blast and the collision occurred almost at the same time. He testified the morning was clear and there were no southward obstructions to the vision of a motorist entering the crossing from the highway on the east.
Walter McKay, a foreman of the company erecting the water tower, testified that he was facing the railroad talking to one of his men at the time of the accident. He stated:
I heard the train blow and about that time I heard the truck, I mean, I heard the crash.
Describing the impact, he said:
I just heard the whistle blow and about the same time I heard it hit the truck and looked up and seen the truck in the air.
In response to further questions he answered that he heard the whistle only two or three seconds before the impact.
Three witnesses who were inside the Shelby Dye Casting Plant, also testified for the appellees. None observed the accident, but since the crossing served both the water tower construction site and the dye casting plant, they were within an area where they could hear the warning signals.
Jerry Hobson testified that he did not hear the whistle, horn or bell before the impact, but that "... after I heard the impact I heard the whistle blow."
Wesley Jenkins, also inside the dye casting plant, testified that he heard "... a whistle blowing and the train hitting the truck."
Robert Coleman, a foreman of the dye casting plant, heard "a whistle blow maybe a few seconds before an impact or simultaneously with an impact."
The Reverend Willie Giles, a resident of Shelby, was called by the plaintiffs as a rebuttal witness. He testified he was standing with Jim Jenkins near the school bus on the morning of the accident. He heard the train whistle blow one time simultaneously with the collision. He did not observe the train until it struck the truck. When asked, on cross-examination, whether the train whistle could have been blown further down the track, he responded:
I didn't hear it. So I couldn't tell what it did do when I didn't hear.
On redirect examination he explained.
Q. In the event that this train had blown its whistle on further down the track, in all probability you would have heard it, would you not?
A. I would have heard it, I believe.
We observe there were three witnesses not employees of the railroad company who testified that the train blew its whistle and rang its bell beginning at or near the whistle post 900 feet south of the crossing. This corroborated the equally positive testimony of the engineer and fireman that the warnings were given. Each of the appellees' witnesses testified the signals were given. The disparity of their testimony and that of the appellants was the time at which the warnings were initiated.
The testimony of the plaintiffs' witnesses, with the possible exception of Reverend Giles, was that they heard the whistle concurrently, or nearly concurrently, with the collision. They did not testify there were no previous blasts of the whistle or ringing of the bell prior to their hearing it immediately before the collision. Consequently, the record is absent affirmative evidence that the whistle did not blow, or the bell did not ring, at a just previous time while *368 the train was further south of the crossing. Reverend Giles responded to a question concerning this situation by stating that had the whistle been blown further down the track, he believed he would have heard it. The sum of the plaintiffs' testimony, with the exception noted, is totally negative. The exception, Giles' rebuttal testimony, at the very most raises a fairly remote inference, possibly a scintilla, that the whistle was not blown nor the bell rung in accord with statute.
We are of the opinion the negative testimony was insufficient to overcome the positive evidence of the defendants that the whistle was blown and the bell was rung. We conclude the verdict of the jury was against the overwhelming weight of the evidence.
In Mobile & O.R. Co. v. Johnson, 157 Miss. 266, 126 So. 827 (1930), we stated the rule appertaining to such evidence as follows:
... "The testimony of witnesses that they did not hear the ringing of the bell on a locomotive as it approached a crossing, without proof that the witnesses listened for the bell, or that their attention was in any way directed to it, or that they probably must have heard the bell if it did ring, cannot prevail against the positive testimony of other credible witnesses that the bell did ring at the time in question." (157 Miss. at 271, 126 So. at 828).
See also Gulf, Mobile & Ohio RR Co. v. Grubbs, 260 So.2d 837 (Miss. 1972); New Orleans & Northeastern RR Co. v. Burney, 248 Miss. 290, 159 So.2d 85 (1963); Illinois Central RR Co. v. Smith, 243 Miss. 766, 140 So.2d 856 (1962); and Yazoo & M.V.R. Co. v. Lamensdorf, 180 Miss. 426, 177 So. 50 (1937).
We do not reach the other assignments of error since the above is dispositive of the suit.
REVERSED AND RENDERED.
INZER, P.J., and SMITH, ROBERTSON, WALKER and BROOM, JJ., concur.
LEE and SUGG, JJ., specially concur.
GILLESPIE, C.J., took no part.
LEE, Justice (specially concurring):
I concur that the case must be reversed and judgment entered here for appellants, but I think the decision should be based upon appellant's assigned Error No. II, that the driver of the truck had actual notice of the approach of the train, and that failure to give the statutory warning signals was not a proximate cause of the accident.
The undisputed evidence indicates that the deceased was driving his truck in a northwesterly direction on U.S. Highway No. 61, which caused his view to be directed toward the railroad tracks and the train. At a point approximately sixteen hundred (1,600) feet south of the crossing, near the "Y", U.S. Highway No. 61 straightened to the north and ran practically parallel with the railroad tracks to the crossing. When the truck arrived at that point, the train was directly in front of it, only one hundred fifty (150) feet away, and was proceeding north at a speed of thirty (30) to thirty-five (35) miles per hour. The deceased drove the truck parallel to the train and to the railroad tracks, with no obstructions between them and the highway, passed the train and turned west upon the crossing and tracks without stopping. From that distance of 1,600 feet to 1,050 feet the distance between the railroad tracks and the highway reduced from 150 feet to 75 feet, and from the distance of 1,050 feet to the crossing, the distance between the railroad tracks and the highway gradually reduced from 75 feet to 57.6 feet. It is inescapable that the deceased was aware of the presence and the approach of the train; otherwise, he would have been both blind and stone deaf. A *369 person is presumed to have seen and heard that which he should have seen and heard.
The purpose of the statutory signals (whistle and bell) is to give notice and warning to the traveling public of the presence and the approach of a train. Undisputed failure to give the signals constitutes negligence per se. However, if an individual is aware of, or knows of, the presence and approach of a train, such negligence would not be a proximate or contributing cause of the accident. New Orleans & N.E.R. Co. v. Burge, 191 Miss. 303, 2 So.2d 825 (1941); Thompson v. Mississippi Cent. R. Co., 175 Miss. 547, 166 So. 353 (1936).
Therefore, since the deceased had actual notice of the presence and the approach of the train, failure to give the statutory warning signals was not a proximate cause of the collision, and liability is not imposed against appellants under that submitted issue.
Testimony of a witness as to the blowing of a whistle and the ringing of a bell, when he did not see the train and the collision, should show that the witness was in position to hear the signals, that his hearing was not impaired, and that he could have heard them had they been given. Witnesses for the appellees testified they were in position to hear the signals; and, in fact, they did hear the whistle blow at the time of, or immediately before, the impact. There is no evidence that their respective hearings were impaired or that they could have not heard the signals, if given.
While I concur that the verdict of the jury was against the weight of the evidence on this issue, I would reverse and remand for a new trial had the undisputed evidence not shown that the deceased truck driver was aware of the presence and the approach of the train.
SUGG, J., joins in this opinion.