# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 1999-CA-00847-SCT

*SHARON CLARK, INDIVIDUALLY, AND AS ADMINISTRATRIX OF THE ESTATE OF PATRICIA MARTIN, DECEASED AND ON BEHALF OF ALL WRONGFUL DEATH BENEFICIARIES OF PATRICIA MARTIN*

*v.*

*ILLINOIS CENTRAL RAILROAD COMPANY AND RICHARD WHIDDON*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/21/1999 |
| TRIAL JUDGE: | HON. W. SWAN YERGER |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | PAT BARRETT |
| ATTORNEY FOR APPELLEES: | GEORGE H. RITTER |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND REMANDED - 09/06/2001 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 9/27/2001 |

**BEFORE McRAE, P.J., DIAZ AND EASLEY, JJ.**

**DIAZ, JUSTICE, FOR THE COURT:**

¶1. This matter arises from a summary judgment motion granted to Richard Whiddon and the Illinois Central Railroad Company (ICR) on each of Sharon Clark's, administratrix of the Estate of Patricia Martin, (Clark) claims arising from a grade-crossing automobile accident which occurred on Old Pearson Road in Rankin County. Clark appealed the trial court's decision asserting the following errors:

> I. THE TRIAL COURT ERRED IN HOLDING THAT CLARK FAILED TO PRESENT PROOF SUFFICIENT TO CREATE A GENUINE ISSUE OF MATERIAL FACT IN SUPPORT OF HER REMAINING CLAIMS
>
> II. THE TRIAL COURT ERRED IN REFUSING TO PRECLUDE ICR FROM ASSERTING FEDERAL PREEMPTION AS A DEFENSE TO CLARK'S CLAIM OF INADEQUATE WARNING DEVICES AT THE RAILWAY CROSSING
>
> III. THE TRIAL COURT ERRED IN HOLDING THAT ICR WAS ENTITLED TO ASSERT THE FEDERAL PREEMPTION DEFENSE TO CHARGES OF EXCESSIVE TRAIN SPEED WITHOUT PROVING THE FEDERAL RAILROAD ADMINISTRATION PREVIOUSLY CLASSIFIED THE SUBJECT TRACK

On March 27, 2001, Clark filed a motion to abandon certain liability theories and supplement the record with color photographs which was granted without objection. Clark's assignments of error labeled II and III were abandoned. We therefore proceed with an analysis of the remaining allegation of error.

## FACTS

¶2. On the morning of June 4, 1996, Patricia Martin left her home in Rankin County, following her usual route to work, along Old Pearson Road in order to access U.S. Highway 49. Before reaching the highway, Martin was forced to traverse a railway crossing. The crossing is equipped with reflectorized "crossbuck" warning signs as well as pavement markings.

¶3. Martin traveled in an easterly direction toward the crossing, and as she drove across the railroad tracks that intersect with the road, a train owned by ICR and operated by Whiddon, the locomotive's engineer, entered the crossing from the south, striking her vehicle. The train carried the vehicle approximately a quarter of a mile down the track, killing Martin.

## STANDARD OF REVIEW

¶4. Rule 56(c) of the Mississippi Rules of Civil Procedure allows summary judgment where no genuine issues of material fact exist such that the moving party is entitled to judgment as a matter of law. To prevent summary judgment, the nonmoving party must establish a genuine issue of material fact by means allowable under the rule. *Lumberman's Underwriting Alliance v. City of Rosedale*, 727 So. 2d 710, 712-13 (Miss. 1998). When reviewing the granting or the denying of summary judgment, we use the same standard employed by the trial court under Rule 56(c). This Court conducts de novo review of orders granting or denying summary judgment and looks at all the evidentiary matters before it--admissions in pleadings, answers to interrogatories, depositions, affidavits, etc. The evidence must be viewed in the light most favorable to the party against whom the motion has been made. *City of Rosedale*, 727 So. 2d at 712-13. If any triable issues of material fact exist, the lower court's decision to grant summary judgment will be reversed. *Brown v. Credit Ctr., Inc.*, 444 So.2d 358, 362 (Miss.1984).

## LEGAL ANALYSIS

> I. THE TRIAL COURT ERRED IN HOLDING THAT CLARK FAILED TO PRESENT PROOF SUFFICIENT TO CREATE A GENUINE ISSUE OF MATERIAL FACT IN SUPPORT OF HER REMAINING CLAIMS

¶5. Clark's remaining claim on appeal is a mixture of several assertions of error. Clark believes that sufficient evidence existed to proceed to trial based upon ICR's negligence in allowing excessive vegetation to grow at the crossing, thus obstructing Martin's view as she entered the crossing. Additionally, Clark asserts that ICR was negligent in failing to sound an adequate audible warning as the train approached the crossing and in failing to keep a proper lookout to slow the train in a timely manner to avoid colliding with Martin.

> *1. Obstructed View of the Crossing*

¶6. In support of this claim, Clark offered several photographs of the crossing taken from various angles and the affidavit testimony of Dr. Ken Heathington. Dr. Heathington's report of the site inspection of the crossing at Old Pearson Road outlines his opinion of whether a motorist's view would be obstructed when

approaching the crossing. Dr. Heathington found that sight distances from the road looking down the track were "severely restricted" from all angles. He noted that the crossing was positioned at a 44 degree angle, providing approximately fifteen feet of crossing width to an automobile. Dr. Heathington further found that in order to avoid a collision, an automobile traveling ten miles per hour and a train traveling 49 miles per hour approaching the crossing in question from different directions, the vehicle operator must see the train 711 feet from the crossing when the vehicle operator is 70 feet from the crossing. Deposition testimony included in the record and information submitted during oral argument place the driver's clear sight distance down track in a range from 175 feet to approximately 28 feet from the crossing. Thus, a jury question is presented regarding where clear sight distance down track occurs and whether that amount of space is a reasonable distance to see an oncoming train and stop, given the peculiarities of the crossing. Although Dr. Heathington's report is based upon a slightly elevated train speed, this provides an area ripe for cross-examination by counsel for ICR.

¶7. Ordinary care requires the railroad company to meet the unusual conditions of a railroad crossing with unusual precautions, particularly where the dangerous condition results from obstructions of view which prevent a traveler from seeing an approaching train until he is dangerously close to the track. *New Orleans & Northeastern R. Co. v. Lewis,* 214 Miss. 163, 172, 58 So. 2d 486, 489 (1952). The nature of the obstruction and whether one must come dangerously close to the crossing before being able to see the train are factual questions to be resolved by the finder of fact. *Badger v. Louisville & N. R. Co.,* 414 F.2d 880, 882-83 (5th Cir. 1969). On point with the factual situation in the case sub judice, it has been held that negligence claims against a railroad that permitted the view at a crossing to become obstructed by trees, bushes, weeds and grass were matters for the jury to decide when a vehicle operator would have to proceed to a point of peril upon or dangerously near the railroad company's tracks before obtaining an unimpeded view of a train at an appreciable distance. *Stacey v. Illinois Cent. R. R.,* 491 F.2d 542, 544 (5th Cir. 1974).

¶8. ICR submits that the recent *Norfolk S. Ry v. Shanklin,* 529 U.S. 344, 120 S.Ct. 1467, L. Ed. 2d 374 (2000) decision federally preempts Clark's state tort claim based upon the excessive vegetation growth. The *Shanklin* decision and its precursor, *CSX Transp., Inc. v. Easterwood,* 507 U.S. 658, 113 S. Ct. 1732, 123 L. Ed. 2d 387 (1993), which both involved wrongful death actions resulting from trains colliding with automobiles at railroad crossings, are distinguishable from the case at bar. In *Easterwood*, the United States Supreme Court addressed the issue of federal preemption of claims rooted in accidents allegedly caused by inadequate warning devices at particular railroad crossings. *Easterwood,* 123 L. Ed. 2d at 404. The Court held that where federal funds are expended for the installation of warning signs or devices at railroad crossings, state law claims for failure to provide additional warning devices are preempted by the Federal Rail Safety Act of 1970 (FRSA), 49 U.S.C. §§ 20101 *et seq*., and the Highway Safety Act of 1973 (HSA), 23 U.S.C. §§ 130 *et seq*. 123 L. Ed. 2d at 401. The *Easterwood* decision is cited with approval in *Shanklin*.

¶9. In *Shanklin*, the plaintiff argued that federal preemption should not apply despite the fact that federal funds were used to install passive warning devices. *Shanklin*, 120 S.Ct. at 1476. The United States Supreme Court reasoned that preemption arose under the Secretary of the Federal Highway Administration's (FHWA) regulations because, by approving and funding grade crossing improvements, the FHWA replaces state common law standards for measuring the adequacy of warning devices. "It is this displacement of state law concerning the device's adequacy, and not the State's or the FHWA's adherence to the standard set out in [23 C.F.R.] §§ 646.214(b)(3) and (4) . . . that pre-empts state tort law actions."

*Shanklin,* 120 S. Ct. at 1476. Sections 646.214(b)(3) and (4) are applicable when three requirements are satisfied: (1) The FHWA "approves a crossing improvement project"; (2) the improvements are "actually installed and operating"; and (3) "federal funds participate in the crossing improvement project." *Shanklin*, 120 S.Ct. at 1476.

¶10. ICR argues that the holding in *Easterwood* and reaffirmed in *Shanklin* also covers the railroad's duty to maintain a crossing clear of vegetation. ICR believes that because federal funds were spent on the warning devices found at the Old Pearson Road crossing, they are free of any extraneous but related claims that accrue under state tort law. We disagree. The *Shanklin* decision presents a very precise question for resolution; that being whether §§ 646.214(b)(3) and (4) are applicable to all warning devices actually installed with federal funds 120 S. Ct. at 1467. The language and discussion throughout the decision refer exclusively to the installation and maintenance of *warning devices alone* and not the maintenance of general track conditions. Herein lies the essential difference between Clark's claim and *Easterwood* and its progeny. Clark's obstructed view claim has nothing to do with the adequacy of the warning devices found at the Old Pearson Road crossing. It therefore falls outside of the narrow confines of *Shanklin's* holding. *See also* **Hester v. CSX Transp., Inc.,** 61 F.3d 382, 384 (5th Cir. 1995) (citing *Easterwood,* yet allowing remaining negligence theories including obstructed view by vegetation to go to trial despite railroad's federal preemption claim).

¶11. Principles of federalism operate with particular force to preserve traditional spheres of state law. The ultimate goal to be achieved, either through the application of state negligence law or federal regulations, is reasonable safety at grade crossings. It would be illogical and against firm public policy to find that the railroad has been excused from its common law duty to maintain an otherwise safe crossing simply because the FHWA signed off on a request for funds to install the passive warning devices at this crossing. *See* Miss. Code Ann. §§ 77-9-257 (Supp. 2000)[1]. Under aforementioned precedent, we reverse the trial court's finding and remand for trial on Clark's obstructed view claim.

### 2. Failure to Sound an Adequate Audible Warning

¶12. Clark also asserts that ICR negligently failed to properly sound the locomotive's whistle and engine bell warning Martin of the train's approach. All parties agree that this claim escapes the grasp of federal preemption. Clark submitted deposition testimony of five individuals who reside near the subject crossing. Each witness testified that they did not hear a whistle or bell sound prior to the collision, though all testified that they did hear the collision.

¶13. ICR submitted the deposition testimony of Whiddon and William J. Carter, the train's conductor, that Whiddon began blowing the locomotive's whistle and sounding the engine bell when they passed the "whistle post," a point on the track labeled as such to notify the engineer of the appropriate location to sound the whistle. Whiddon testified that he sounded the engine bell and blew the whistle from that point until impact with Martin's automobile.

¶14. This testimony is corroborated by the affidavit testimony of Professor MacRae, who reported the recordings of the train's "event recorder." The event recorder notes each time the whistle was blown and it recorded the whistle sounding approximately 900 feet south of the crossing.

¶15. Additionally, ICR relies upon **Illinois Cent. Gulf R.R. v. Yates** as authoritative precedent that the type of testimony presented via deposition on behalf of Clark is insufficient to sustain their prima facie case.

This reliance is misplaced. ICR specifically points out that

> [t]he testimony of witnesses that they did not hear the ringing of the bell on a locomotive as it approached a crossing, without proof that the witnesses listened for the bell, or that their attention was in any way directed to it, or that they probably must have heard the bell if it did ring, cannot prevail against the positive testimony of other credible witnesses that the bell did ring at the time in question.

*Yates,* 334 So.2d at 368 (citing *Mobile & O. R. Co. v. Johnson,* 157 Miss. 266, 271, 126 So. 827, 828 (1930)). This situation is distinguishable from the instant case. Procedurally, both the *Yates* decision and the *Johnson* decision were appeals from a jury verdict and not before this Court on review from summary judgment. Thus, the standard of review applicable to evidence presented at trial and evidence contained in a summary judgment record are decidedly different. While such testimony alone may not be able to sustain a jury verdict, it certainly presents a version of events contradictory to ICR's, producing a classic question for the fact finder to resolve.

¶16. Additionally, the language in the above-quoted passage promotes a certain strand of semantics that produces rather circular logic. For example, an applicable excerpt of deposition testimony of Aliva Ann Rogers went as follows:

> MR. KNIGHT: Was the first thing you heard the accident happening? Tell me what was the first thing you heard.
>
> MRS. ROGERS: I just heard the crash.
>
> MR. KNIGHT: You don't remember hearing anything before that?
>
> MRS. ROGERS: No.
>
> MR. KNIGHT: Okay. Is that what first let you know that the train was there?
>
> MRS. ROGERS: Right.
>
> MR. KNIGHT: Okay. So, then did you hear a locomotive whistle?
>
> MRS. ROGERS: No.
>
> MR. KNIGHT: Okay. Do you know if the whistle blew?
>
> MRS. ROGERS: I don't know. I didn't hear it. So, you know, if it did, I didn't hear it.

It appears as though ICR wants this Court to hold that because Mrs. Rogers and four other witnesses said "I didn't hear it" instead of saying "The whistle did not blow," no genuine issue of material fact exists as to Clark's failure to adequately sound an audible warning claim. We decline to so. One treads into murky waters when parsing such distinctions from incomplete deposition testimony. How can one truthfully say that the whistle did not blow, as opposed to saying they didn't hear a whistle blow? If it didn't blow, certainly, no one heard it. However, if it did blow, those living behind a railroad track crossing that sees up to eight trains a day may eventually tune out as familiar those sounds which are striking to others. This again is a question for the jury to resolve.

¶17. We believe the better approach concerning cases not reaching a jury verdict is found in *Walker v. Louisville & Nashville R.R.,* 571 F.2d 866 (5ᵗʰ Cir. 1978). The *Walker* decision arose out of a wrongful death action against the railroad by the estate of the deceased for damages as a result of the collision between the decedent's vehicle and a train operated by the named railroad. The *Walker* court, interpreting Mississippi law, found that where inconsistent testimony regarding whether the whistle sounded and witnesses so situated in the ordinary course of events would have heard or seen the fact had it occurred was sufficient to require a full jury trial. *Id.* at 868.

¶18. This Court has held that a trial court should err on the side of denying motions for summary judgment. *Doe v. Stegall,* 757 So.2d 201, 204 (Miss. 2000). To survive a motion for summary judgment, the party opposing the motion need only present a material issue of fact. *Id.* at 206. The trial judge should have allowed this issue to proceed to trial.

## CONCLUSION

¶19. The evidence Clark presented on her remaining claim put forth a genuine issue of material fact. Considering all of the evidence, we are convinced that there was a conflict that created a jury question concerning the railroad's liability on the obstructed view and failure to sound adequate audible warning claim. There was evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions. It is the function of the jury as the traditional finder of the facts, and not the Court, to weigh conflicting evidence and inferences, and determine the credibility of witnesses For the above stated reasons, we reverse and remand the decision of the trial court for further proceedings consistent with this opinion.

¶20. **REVERSED AND REMANDED.**

> **PITTMAN, C.J., BANKS AND McRAE, P.JJ., MILLS, WALLER AND EASLEY, JJ., CONCUR. COBB, J., CONCURS IN RESULT ONLY. SMITH, J., DISSENTS WITH SEPARATE WRITTEN OPINION.**

> **SMITH, JUSTICE, DISSENTING:**

¶21. The majority ignores precedent under state statutes in holding that Clark put forth a genuine issue of material fact and the trial court erred in granting summary judgment. Illinois Central Railroad Company and Richard Whiddon are entitled to judgment as a matter of law on appellant's claims for failure to maintain adequate sight distance at the subject crossing and failure to sound the locomotive's whistle on the grounds that the appellant can produce no evidence sufficient to support the essential elements of her claim. Accordingly, I respectfully dissent.

¶22. Clark refers to Dr. Heathington's opinions as to sight deficiencies. This testimony, however, is seriously flawed. First, Dr. Heathington based his opinions regarding the necessary sight distance on a train speed of 49 miles per hour. Yet, the record reflects that the train was actually traveling at only 38 miles per hour. The parties do not dispute this fact. Dr. Heathington offered no opinion as to a minimum sight distance he believed to be appropriate for a train traveling 38 miles per hour. Secondly, Dr. Heathington's opinions at "slower speeds" do not comport with the law of this state.

¶23. Miss. Code Ann. § 77-9-249(4) places an absolute duty on a motorist approaching a crossing indicated by a crossbuck sign to slow to a speed reasonable for the location and be prepared to stop within

the 15-50 foot zone if a train is present. Moreover, Clark's reliance on a witness who based his opinions on the speed and distance is misplaced. This Court has stated the following telling words:

> Mitcham argues that § 77-9-249(4) has abrogated the duty to stop, and that a driver should have sufficient unobstructed vision to execute a safe and lawful stop after seeing an oncoming train. [citation omitted]. Mitcham goes further and urges that since there is no longer an absolute duty to stop at a railroad crossing, that a motorist should be permitted to drive at the maximum speed limit without regard to the fact that he is approaching a railroad crossing, *and that the distance of unobstructed vision should be based upon this speed. This contention is wholly without merit and borders on the ridiculous.*

*Mitcham v. Illinois Cent'l Gulf R. Co.*, 515 So.2d 852, 855 (Miss. 1987) (emphasis added).

¶24. Martin had a continuing duty to look in both directions as she proceeded from the painted stop bar to the tracks. Clark's contention that vegetation in the vicinity of the crossing constituted an unreasonable visual obstruction supported solely by the opinion testimony of her retained witness must yield to the photographs taken on the day of the accident. The law is clear that testimony about the condition of a crossing which conflicts with physical evidence, such as photographs, must yield to the physical evidence. *See Young v. Illinois Cent'l Gulf R. Co.*, 618 F.2d 332, 337 (5th Cir. 1980); *Green v. Gulf, M.& O. R. Co.*, 244 Miss., 141 So.2d 216, 211, 220-21 (1962). Here, the plaintiff admitted that the photograph accurately depicted the conditions at the crossing on the day of the accident and that a motorist could see an approaching train for several hundred feet. The accuracy of the photograph was also confirmed by ten independent witnesses. Had Martin properly slowed down and looked south, she would have had ample authority to safely stop and then proceed when safe to do so. On such evidence, the lower court properly dismissed the plaintiff's inadequate sight distance claim.

¶25. Although the majority attempts to use semantics and hypothetical questions to make its argument, our case-law is clear. This Court has repeatedly and consistently held the testimony of witnesses that "they did not hear a whistle or bell" insufficient to rebut affirmative evidence that the whistle and bell were indeed properly sounded. Specifically, we stated the rule appertaining to such evidence as follows:

> The testimony of witnesses that they did not hear the ringing of the bell on a locomotive as it approached a crossing without proof that the witnesses listened for the bell, or that their attention was in any way directed to it, or that they probably must have heard the bell if it did ring, cannot prevail against the positive testimony of other credible witnesses that the bell did ring at the time in question.

*Illinois Cent'l R. v. Yates*, 334 So.2d 364, 368 (Miss. 1976) (quoting *Gulf Mobile & O. R. Co. v. Johnson*, 157 Miss. 266, 271, 126 So. 827, 828 (Miss. 1930)) (citing *Gulf, Mobile & Ohio RR Co. v. Grubbs*, 260 So.2d 837 (Miss. 1972); *New Orleans & Northeastern RR Co. v. Burney*, 248 Miss. 290, 159 So.2d 85 (1963); *Illinois Cent'l R. v. Smith*, 243 Miss. 766, 140 So.2d 856 (1962); *Yazoo & M.V.R. Co. v. Lamensdorf*, 180 Miss. 426, 177 So. 50 (1937)).

¶26. In the case before us, there is no proof that the Clark's witnesses listened for the bell, that their attention was in any way directed to it, or that the witnesses must have heard it if it did ring. When asked, none of the witnesses for Clark could affirmatively testify that the whistle was not properly sounded. Rather, each would only testify as to not hearing it. When considered against the affirmative testimony of the train crew and, more importantly, the event recorded readings taken from the locomotive, which undisputably

show that the whistle was properly sounded, Clark's completely negative evidence is legally insufficient to generate a triable issue.

¶27. This Court has clearly articulated what is needed to create a jury question. "A mere scintilla of evidence for the plaintiff is insufficient to present a question for the jury. There must be conflict in substantial evidence to create a jury question." *Columbus Paper & Chem., Inc. v. Chamberlin*, 687 So.2d 1143, 1148 (Miss. 1996). *See also **Stranz v. Pinion***, 652 So.2d 783, 741 (Miss. 1995); **Hertz Corp. v. Goza**, 306 So.2d 657, 661 (Miss. 1974). In the present case, Clark's witnesses that would only testify to not hearing the train whistle versus the affirmative testimony from the railroad company witnesses does not create a conflict in substantial evidence to create a jury question.

¶28. The grant of summary judgment by the lower court should be affirmed. Therefore, I respectfully dissent.

1. Mississippi Code Ann.§ 77-9-257 reads:

> Inspections - The Mississippi Transportation Commission shall have every railroad inspected whenever it shall deem the same necessary, but at least once in each year. The results must be entered upon the minutes of the commission and embraced in its reports, and must embrace information as to the condition of the roadbed, rolling stock and depots, and such other facilities and equipment as the commission may deem proper. Whenever the commission shall find any roadbed, tunnel, switch or any part of a railroad track, or any rolling stock in actual use, in an unsafe condition, it shall direct the railroad company to make the necessary repairs.