McClellan v. Illinois Cent. R. Co.

In Banc. Nov. 22, 1948.

(37 So. (2d) 738)

434

Berger & Callon, for appellant.

Luther **A. Whittington** and **Jesse E. Johnson, Jr.,** for appellee.

**McGehee, J.**

This appeal is from the action of the trial court in granting a peremptory instruction in favor of the defendant, Illinois Central Railroad Company, at the close of the evidence offered by the plaintiff, Ozee McClellan, who sued for damages on account of personal injuries sustained in jumping from a moving passenger train under the circumstances hereinafter stated.

The proof discloses that the plaintiff, who was forty-nine years of age, had accompanied his sister-in-law, Mary Tidwell, to the railroad station at Port Gibson, Mississippi, where she boarded a northbound passenger train at about 7:45 p.m. on July 23, 1947. That as soon as those in charge of the train were ready to receive passengers abroad, the plaintiff, who was assisting his sister-in-law with her luggage, inquired of the train porter in the presence of the conductor at the entrance as to whether or not it would be all right for him to carry the luggage on the train, and whether he would have time to do so and then get off. That upon receiving an affirmative answer, and in the absence of any offer on the part of the porter to take this heavy luggage on the train for this passenger, the plaintiff accompanied her to a seat in the compartment provided for colored passengers, placed one of the suit cases into a rack, and before having time to properly place the other and larger one, noticed that the train had begun to move. That thereupon he

began to retrace his steps without unnecessary delay, encountered the conductor in the aisle near the entrance, asked if he could get off, and received an affirmative answer from him in that behalf. That he rushed on by the conductor and was preceded by the porter to the platform where the trap door had been lowered over the steps, and where the door had been closed. That the porter thereupon opened the door and told him to jump when the train had moved about one block from the station.

Plaintiff further testified, however, that when he jumped off the train, it was, according to his judgment, running about fifteen miles an hour; but since he testified elsewhere ''Well, it was in the dark'' the jury was entitled to consider that this rate of speed was necessarily only an estimate made in his haste to get off a moving train.

It was not shown that the plaintiff requested the conductor to stop the train, but merely inquired of the conductor as to whether he could get off and received an affirmative answer, as heretofore stated.

The Court is of the opinion that the evidence was sufficient to show that the conductor understood that the plaintiff intended to get off the train and acquiesced in his undertaking to do so, without offering to stop the train for that purpose. That the opening of the door by the porter was an invitation to the plaintiff to get off without the trap door being so raised that he could go down the steps to alight therefrom nearer the ground than the distance he had to jump from the trap door platform above the steps.

At any rate, the Railroad Company owed to the plaintiff the duty under the circumstances not to start the train until he had time to get off since those in charge knew the purpose for which he had entered the train, and that he intended to return to the entrance and get off. Moreover, if the starting of the train occured while his intention to get off was momentarily

overlooked or forgotten by those in charge thereof, then it became their duty to offer to stop the train, or cause the same to be stopped, in order that he could get off in safety.

The practice is so prevalent as to be a matter of common knowledge that many passengers are in need of assistance in boarding trains with luggage, and that unless those in charge of a train offer such assistance, it must be rendered by some person accompanying the passenger to a station. This being true, the courts in other jurisdictions have recognized it to be the law that one who, according to such custom, goes on a train to assist a passenger in such manner, is entitled to have the railroad company exercise ordinary care for his safety and protection while he is entering the car, while he is in it, and while he is leaving it, notwithstanding that he is merely licensee or invitee, and not a passenger thereon. And, this is especially true where a passenger is in actual need of such assistance as was true in the instant case, and the employees of the carrier do not undertake to render it. And, where the purpose of such person in entering a train to assist a passenger is known to the conductor, or other employee in charge of the train, it is the duty of the carrier to give him a reasonable opportunity and time to render such assistance and safely leave the train. 10 C. J., Sec.1362, page 943; 13 C. J. S., Carriers, Sec. 732, page 1372, and the cases there cited.

The precise question presented by the foregoing facts has not been previously presented to this Court for decision, and we shall therefore give the question the attention which we think its general importance requires. In the case of Southern R. Co. v. Patterson, 148 Ala. 77, 41 So. 964, 121 Am. St. Rep. 30, the Court said:

"The plaintiff received his injuries from a fall caused by stepping from one of the defendant's passenger trains while moving. It was shown both by the averments of the complaint and his testimony that he had boarded

the train for the purpose solely of assisting an old lady, who was nearly blind, at her instance and request, to take passage upon it; and before he could locate her in a seat the train began to move out of the station. According to the averments of the complaint and his testimony, he had told the conductor in charge of the train, before boarding it, of the old lady's condition and of her need of assistance to get upon the train, and to secure a seat, and was requested by that officer to perform that service. It is undoubtedly the law that 'a carrier owes a duty to persons who come upon a train accompanying passengers, with the intention of getting off before the train starts or for the purpose of meeting passengers who are about to alight. And especially is there such a duty when the passenger requires assistance which the servants of the carrier do not undertake to render. But if the servants of the carrier have not notice or knowledge of the intention of one thus coming on board to get off before the starting of the train, they owe him no additional duty as to affording him an opportunity to safely alight.' 6 Cyc. p. 615. But where the conductor of the train knows or should have known that the only purpose of the person assisting a passenger, needing assistance to board the train, is to assist the passenger to a seat, he is bound to give such person a reasonable opportunity to alight before starting it. And if, after the train is started, the person alights from it, and is injured, and his act of alighting is not under such circumstanses as to make him guilty of contributory negligence, he is unquestionably entitled to recover the damages suffered by him. Louisville & N. R. Co. v. Crunk, 119 Ind. 542, 21 N. E. 31, 12 Am. St. Rep. 443; Galloway v. Chicago R. I. & P. Ry. Co., 87 Iowa 458, 54 N.W. 447; Evansville & T. H. R. Co. v. Athon, 6 Ind. App. 295, 33 N. E. 469, 51 Am. St. Rep. 303; Wood on Railroads, Sec. 305, p. 1297, and note 2; 2 Redfield on the Law of Railways, p. 280; 4 Elliott on Railroads, Sec. 1578, p. 2458; note 29 Am. St. Rep. p. 54.''

In that case the defendant railroad company sought to invoke the doctrine of contributory negligence, then a bar to recovery in the State of Alabama, but the Court declared: "Nor can it be affirmed, as a matter of law, that plaintiff's alighting from the train, while moving, under the circumstances shown, was an act of negligence which would defeat his recovery. Whether it was or not was a question for the jury. Central Railroad & Banking Co. v. Miles, 88 Ala. 256, 6 So. 696; North Birmingham St. Ry. Co. v. Calderwood, 89 Ala. 247, 7 So. 360, 18 Am. St. Rep. 105; Montgomery & Eufaula R. Co. v. Stewart, 91 Ala. 421, 424, 8 So. 708; Watkins v. Birmingham Railway & Electric Co , 120 Ala. 147, 152, 24 So. 392, 43 L. R. A. 297, and authorities there cited. There was clearly no duty on plaintiff to request the conductor to stop the train, after it started, for him to alight. Miles' case, supra. He had the right to get off, and if injured in doing so he may recover if the conductor knew or ought to have known what his purpose was in boarding it, there being no dispute but that he was diligent in the service he was rendering, and in getting off he did no more than a prudent and careful man would have done."

The proviso, shown in the last clause of the above quotation, was evidently stated for the reason that contributory negligence was then a bar to a recovery in that State, and this is also shown by the last sentence in the first quoted paragraph from the opinion.

It is true that it is not shown in the Patterson case, supra, how fast the train was moving when the plaintiff alighted, but that would have a bearing only on the question of whether the railroad company would be entitled to have the jury instructed, as a matter of law, that the plaintiff was at the time guilty of negligence in the case at bar, which could be urged in mitigation of damages and not as a bar to recovery in this State unless constituting the sole, proximate cause.

 In the instant case it may be conceded for the purpose of this decision, and for that purpose alone, that the plaintiff was guilty of gross negligence in jumping from this train while it was running at a rate of speed which he judged to be fifteen miles per hour instead of remaining on the train in safety while being carried to the next station. However, his negligence would not be a bar to a recovery of damages for the serious injuries which he claims that he sustained, if the negligence of the defendant, or its violation of the duty owned to him in starting the train before he had a reasonable time to get off, was continuing as a contributing cause of his jumping off of a moving train and sustaining such injuries.

 It is true that if the plaintiff had not jumped off of the train he would not have been injured, but it is likewise true that if he had been permitted to get off before the train started to move he would not have been injured in the manner complained of. Moreover, if those in charge of the train intended to permit him to alight therefrom while the train was moving, as the opening of the door, without the speed of the train being checked, would indicate, it would be for the jury to determine whether or not the defendant's negligence in not raising the trap door so as to permit him to alight from the bottom step was a direct, contributing cause to his injuries. While the plaintiff had theretofore had some experience in riding trains, those in charge thereof had no right to assume that he was experienced in jumping off moving trains, or that he could do so with reasonable safety. Hence, the defendant cannot be heard to say that the plaintiff should have remained on the train until it stopped at the next station when the undisputed proof discloses that the porter opened the door as an invitation to him to jump, and where, according to the testimony of the plaintiff, the porter actually told him to jump; and where the proof further shows that the conductor had agreed to let him off at

that station. Then, too, since it is customary for a porter to let people on and off passenger trains, it would seem that he was acting within the apparent scope of such authority when inviting the plaintiff to jump off under the circumstances complained of, and especially in the absence of any attempt by the conductor to cause the train to be stopped or slowed down for that purpose under the facts testified to herein.

In the case of Thompson v. Yazoo & M. V. R. Co., 72 Miss. 715, 17 So. 229, a boy thirteen years of age, who had boarded a moving freight train, was ordered by the conductor to get off while the train was yet in motion, but running more slowly than when he got on; and, in attempting to obey, the boy fell under the train, and was injured. It was held that the question as to whether the act of the conductor was negligent was for the jury. That issue was submitted to the jury, and with the result that a verdict was rendered in favor of the railroad company. On appeal, the plaintiff contended that he was entitled to a peremptory instruction on the ground of the alleged negligence of the conductor. It was held that the conductor was not negligent, as a matter of law, because the proof disclosed in that case that the boy was in the habit of jumping on and off of moving trains with safety under similar conditions to those involved in that case. And it was shown that the boy possessed as much dexterity in boarding and leaving trains as railroad men have; and then too, he was a trespasser to whom no such duty was owed as owing to the plaintiff in the case at bar.

In the case of Howell v. Illinois Cent. R. Co., 75 Miss. 242, 21 So. 746, 36 L.R.A. 545, it was held to be negligence, as a matter of law, for a bright, active boy, thirteen years old, a trespasser on a train, who knew the attendant danger, to voluntarily attempt to jump from a train which was running twenty miles an hour. At that time, contributory negligence was a bar to a recovery of damages in this State by a person so injured. The

Court said in that case that the controlling question was whether or not the plaintiff was chargeable with contributory negligence, but there were other observations made in the course of the opinion which would tend to support the contention of the defendant in the case at bar, to the effect that the negligent act of the plaintiff was the sole, proximate cause of his injury.

In the Howell case, supra, the plaintiff was an expert in jumping on and off moving trains. He had done this for two years before his death, constantly in the daytime and on some few occasions at night. He had been repeatedly warned of the danger of this practice, and the statement of facts contained in the opinion of the Court in that case clearly discloses that the plaintiff knew that it was extremely dangerous, even for him, to make the attempt to jump off the train. The Court said, in discussing the rights of this trespasser, that: "On these facts we think the court could not have done otherwise than give the peremptory instruction. The controlling question in the case is whether the boy, Solon Howell, Jr., was, in his situation, and of his age, chargeable with contributory negligence." And, it was further stated in discussing the nonliability of the railroad company that: "It owed him—a trespasser—no duty save not wilfully to injure him . . . Trespassers cannot recover for mere negligent injury." And, the plaintiff was injured "because he attempted to get off voluntarily, or accidentally fell off. It was the getting off or falling off that caused the injury, without which it would not have occurred." In other words, the railroad company was at the time of the accident violating no duty that it owed to the plaintiff, and that being true his attempt to get off of the train, under he circumstances of that case, was the sole, proximate cause of his injury. The decision of nonliability could have well rested at that time on the plaintiff's contributory negligence, which would not defeat liability under the law of this State now in force.

We are therefore of the opinion that the instant case should have been submitted to the jury under proper instructions in accord with the legal principles hereinbefore stated.

Reversed and remanded.