NEW ORLEANS & NORTHEASTERN RAILROAD COMPANY et al.
v. SHOWS

No. 41784          March 27, 1961          128 So. 2d 381

*Winston Cameron,* Meridian, for appellants.

*Collins & Tew,* Laurel, for appellee.

RODGERS, J.

J. S. Shows was injured by appellant's freight train No. 56 at the intersection of Central Avenue with the right-of-way of the New Orleans & Northeastern Railroad Company in the City of Laurel, Mississippi. The railroad runs north and south through the City of Laurel, crossing Ash Street, Central Avenue and Church Street. Front and Maple Streets run in a northerly and south-

erly direction parallel with the railroad, Front Street on the west side and Maple Street on the east side. On Saturday, April 18, 1959, about 11 A. M., Mr. Shows was seen to approach the railroad crossing, walking along the sidewalk on the north side of Central Avenue, going in a westerly direction at the time when the appellee's train was being driven north by its engineer, Mr. K. C. Walker. The train struck Mr. Shows, injuring him seriously. He was taken to the hospital and died eight days later, and during this time he was often conscious and suffered excruciating pain. The administrator of his estate filed suit against the Railroad Company and K. C. Walker, the engineer, alleging that defendant's train was driven at approximately fifty miles an hour over a crowded street being used by pedestrians and many vehicles almost bumper to bumper; that no signal was given; and the defendant engineer K. C. Walker did not keep a proper lookout.

The case was tried in the Circuit Court of Jones County, resulting in a verdict in favor of the appellee Coda C. Shows, Administrator, in the sum of $20,000.

The appellant Railroad Company in its brief raises and argues four questions, namely, (1) the trial court erred in refusing to admit the testimony of Harry Fridge, M. D.; (2) that the trial court erred in refusing appellant's application for a peremptory instruction directing the jury not to make any award based upon the claim that the engineer did not keep a proper lookout; (3) that there was not sufficient evidence upon which the jury could base a verdict for the plaintiff; and (4) that the trial court erred in rendering judgment for the sum of $20,000 because appellant claims this is excessive.

The testimony in this case discloses that the train being driven through the crowded streets of the City of Laurel on Saturday afternoon was composed of 196 cars, was approximately two miles long, and weighed around 8,956 tons. The engineer knew the surrounding area and

had for many years operated a train over Central Avenue in the City of Laurel.

The appellant offered Dr. Harry Fridge, a medical doctor, who testified that he treated J. S. Shows, at Richton and Hattiesburg, Mississippi, in 1947; and in the absence of the jury testified that the deceased was deaf in both ears as a residual of the disease of spinal meningitis, but this testimony was not permitted to go to the jury.

Mr. Will C. Ishee had previously been permitted to testify on direct examination that the deceased was hard of hearing, and it was necessary to talk loud to get him to understand. He testified that he had not talked with J. S. Shows for about three years before the accident.

Dr. Fridge obtained his knowledge of the physical condition of J. S. Shows at a time when he treated him, and of course his knowledge of the deafness was privileged information under Section 1697, Code of 1942 Recompiled. The doctor's knowledge of his condition was obtained more than ten years before his injury and death. Moreover, his testimony would have been accumulative, and we do not believe the court committed reversible error in refusing to permit Dr. Fridge to testify in this case.

The contention of the appellant that it was entitled to a peremptory instruction on the question of failure of the engineer to keep a lookout is based upon the testimony of the engineer and Will Ishee that Mr. Shows walked in a westerly direction in front of the train, without stopping or listening; and upon the theory that the engineer kept a proper lookout inasmuch as he saw Mr. Shows approaching the railroad track. The testimony in this, however, indicates that Central Avenue was a very busy thoroughfare on Saturday morning, that trucks and automobiles were parked there and the moving traffic created noise; and the engineer knew that his train could not be stopped for some distance. The jury

had a right to believe that the engineer was not keeping a proper lookout, and we are of the opinion that this was a question for the jury. The instruction requested by the appellant, taking from the jury the question of keeping a proper lookout, was properly refused.

■■ ■ The appellant contends that the trial court erred in entering judgment against the Railroad Company on a verdict in the sum of $20,000, and erred in overruling a motion for a new trial based upon the proposition that the verdict of the jury is against the overwhelming weight of the evidence. The testimony as to the speed of the train is a question for the jury on conflicting evidence. There was conflicting evidence as to whether or not the signals required of the Railroad Company were given as the train approached the Central Avenue crossing. We are of the opinion, and so hold, that the conflict of testimony in this case presented a question for the jury. See Section 1455, Miss. Code of 1942 Recompiled; Columbus & Greenville R. Company v. Lee, 149 Miss. 543, 115 So. 782; Gulf & S. I. R. Company v. Simmons, et al., 150 Miss. 506, 117 So. 345; Yazoo & M. R. Company v. Pittman, 169 Miss. 667, 153 So. 382; Mississippi Cent. R. Company v. Smith, 173 Miss. 507, 154 So. 533, 159 So. 562; McClellan v. I. C. R. R. Company, 204 Miss. 432, 37 So. 2d 738.

■■■ The deceased Mr. Shows was eighty-two years of age, and had a life expectancy of 4.46 years, and although he was an elderly man, he continued to farm a small plot of land. He lived eight days in a very crushed and broken condition, having had severe brain concussion, broken ribs and legs, and suffered excruciating pain before his death. The testimony shows there were considerable medical, hospital and funeral expenses. We cannot say from the testimony in this case that the verdict of the jury evinced bias, passion or prejudice.

■■■ The jury is not only the judge of the weight and worth of the testimony but is the judge of the damages

incurred, and unless its verdict is so excessive as to evince bias, passion or prejudice, or so excessive as to shock the enlightened conscience of reasonable men, this Court will not set aside a verdict. We are of the opinion that the verdict is not excessive under the evidence in this case. Belzoni Hardwood Company v. Cinquimani, 137 Miss. 72, 102 So. 470; Sandifer Oil Company, Inc. v. Dew, et al., 220 Miss. 609, 71 So. 2d 752.

The judgment of the lower court will therefore be affirmed.

Affirmed.

*Lee, Gillespie, McElroy* and *Jones, JJ.,* concur.