652 So.2d 738 (1995)
Shirley STRANTZ, for and on Behalf of all the Wrongful Death Beneficiaries of Sharon Cox Minga, Deceased
v.
David W. PINION, Jr., and Illinois Central Railroad Company.
No. 91-CA-01061-SCT.
Supreme Court of Mississippi.
March 16, 1995.
*739 Arnold F. Gwin, Greenwood, for appellant.
Glenn F. Beckham, Upshaw Williams Biggers Page & Kruger, Greenwood, for appellees.
En Banc.
SMITH, Justice, for the Court:
Shirley Strantz (Strantz) appeals this case from the September 24, 1991, grant of summary judgment in the Circuit Court of Leflore County in favor of Illinois Central Railroad Company (Illinois Central) and David W. Pinion, Jr. (Pinion). Aggrieved, Shirley appeals the trial court's decision asserting as error the following:
THE TRIAL COURT ERRED IN ITS GRANT OF SUMMARY JUDGMENT BECAUSE THERE WAS A GENUINE ISSUE OF MATERIAL FACT AS TO THE IDENTITY OF THE DRIVER OF THE TRUCK IN THIS ACCIDENT, AND AS TO THE NEGLIGENCE OF DEFENDANTS ILLINOIS CENTRAL AND PINION.
This case arose from a truck-train collision occurring at approximately 2:00 a.m. on April 4, 1990 at the Rising Sun crossing in Leflore County. After staying at a bar for three hours, Sharon Cox Minga, the deceased, and her boyfriend, John Brent Hill, while driving to another bar, collided with an Illinois Central train. A subsequent blood test analysis would show Hill had a blood alcohol level of .14, and Minga, a blood alcohol level of .13.
Pinion, the conductor of the southbound Illinois Central train was located in the lead engine on the left-hand side. Pinion was the only person to see the entire accident.
The evidence demonstrates that there was no genuine issue of material fact. Pinion was the only witness to the movements of the truck. Strantz offered no expert or lay testimony in the record to refute Pinion's testimony. Pinion's testimony is uncontroverted. With no genuine issues of material fact present, the question becomes one of law.
This Court has held in a similar case, under these circumstances, that the conductor and railroad company was not negligent. Illinois Central R.R. v. Smith, 243 Miss. 766, 774, 140 So.2d 856, 859 (1962).
There is no genuine issue of material fact. The conductor's testimony is uncontroverted by either expert or lay testimony. Furthermore, Pinion's testimony about his conduct and that of his train crew, combined with his testimony about the truck's actions, demonstrate, as a matter of law, that the sole proximate cause of this accident lay with the plaintiffs. There is no merit to Strantz's issue presented this Court, therefore we must affirm the trial court.

FACTS
A truck-train collision occurred at approximately 2:00 a.m. on April 4, 1990 involving a vehicle in which Sharon Cox Minga (Minga) and John Brent Hill (Hill) were traveling. The previous evening, the deceased, and her boyfriend, went to a local bar, the Country Bumpkin. They stayed at this bar from 9:00 p.m. to between 12:30 and 1:00 a.m., when the bar closed. While there, both Minga and Hill had some drinks. Later test analysis would show Hill had a blood alcohol level of .14, and Minga had a blood alcohol level of .13.
Hill and Minga went directly to their apartment from the bar. Hill later stated that Minga wanted to go to another bar, while Hill did not. Hill stated that they *740 agreed to go, but only if Minga would drive. However, accident reports would initially list Hill as the driver of the vehicle, as Hill had so reported to investigating officers.
Hill was the only surviving witness who occupied the truck involved in the collision. Hill testified that they left for the other bar, which brought them to the train crossing. Hill noted that Minga stopped at the Highway 49 intersection. Less than one mile separated the Highway 49 intersection and the train crossing, according to Hill. Hill then testified that he remembered nothing between their crossing Highway 49 and the aftermath of the accident. Hill's next memory was his being on his hands and knees on the road, after the accident. Hill stated that he did not pay attention to the road before the accident. Hill did not recall seeing or hearing the train before the accident.
Pinion, the conductor of the Illinois Central train, was leaving Greenwood at 1:25 a.m. The train was southbound. Pinion was in the lead engine, on the left-hand side. Kenny Foster (Foster), the engineer, was in the lead engine on the right-hand side. Two other members of the train crew, Willie Marsh, and E.B. Walker, were in the second engine. Marsh did not know of the collision until after its occurrence. The record does not demonstrate what E.B. Walker knew of the accident.
While in the Greenwood yards, Pinion kept his train at a speed of 20 miles per hour. Upon leaving the yards, Pinion attempted to accelerate the train to 49 miles per hour. The Rising Sun crossing, where the accident occurred, was 2.5 miles south of the Greenwood yard limit.
Pinion testified that he cleared a tree line into an open area, where he noticed the truck several hundred feet from the crossing. Pinion testified that the engineer properly blew the crossing whistles and sounded the train's bells as the train approached the crossing. The engineer also noted that the headlights, bells, and whistles were operating fine, and were being used under standard procedure. Pinion noted that the truck was going approximately 15 miles per hour. The truck was traveling from east to west, or Pinion's left to right. At that point, Pinion's train was traveling between 30 and 32 miles per hour.
For at least one second, Pinion's view was blocked by fertilizer tanks located between a section of the road Hill and Minga were traveling, and the train. At that point, Pinion looked back at the rear of his train at some railroad cars containing hazardous materials. According to Pinion, this check only took a split-second.
Pinion looked back front, and noted Hill and Minga's truck still traveling at 15 miles per hour. Pinion then stated that the truck accelerated when it reached 150 feet of the crossing. At that point, Pinion testified that his train was 75 feet from the crossing.
Pinion immediately called for the train crew to shoot the emergency brakes. The engineer actually shot the brakes, immediately thereafter. Foster estimated that the train was between 50 to 100 feet from the clearing when Pinion called for the brakes. Shooting the brakes caused the train to activate the air brakes, and cut off the throttle. This procedure is called putting the train "into emergency."
J.K. Foster, the engineer, stated that he never saw the pickup truck from his right-hand vantage point. Foster stated that Pinion had not informed him about the truck until he told Foster to shoot the brakes.
The train hit the truck on the passenger side, directly behind the door. Both Pinion and Foster later stated in an affidavit that application of the brakes that close to the crossing had no effect on the train's speed. Foster noted that the accident occurred about the same time he placed the train in emergency. Pinion could not tell who was driving the truck.
Pinion stopped the train approximately one quarter mile from the crossing. He called for assistance from the Sheriff's Department and rescue services.
David Fondren and Kevin Hayes of the Leflore County Sheriff's Department compiled a description of the accident scene in their report. According to them, the truck was lying approximately 85 feet from the crossing, south and west of that crossing. *741 Hill was lying approximately 32 feet from the truck, north and west from the truck.
Pinion testified that the truck was laying on its passenger side. Pinion noted that Hill had reached the road, and was trying to get up. Pinion also noted the truck was facing north, or north-northwest. Pinion stated that Minga was pinned between the truck's passenger side and the ground. Pinion observed that Minga's head and torso were beneath the truck, out of the passenger's window. The bottom half of Minga's body was still in the passenger's side of the truck.
Steve Baker was a witness to the aftermath of the accident, but not the accident itself. Steve Baker told Pinion that Minga was dead. Pinion reported smelling alcohol around the accident scene. Steve Baker also told Pinion and Kevin Hayes, an investigating officer from the Mississippi Highway Patrol, that Minga had a can of beer in her lap. Kevin Hayes and David Fondren, another investigator, noted that Hill was the driver. Hill later denied that assertion.
On November 30, 1990, Mrs. Shirley Strantz (Strantz) filed a wrongful death action against Pinion and Illinois Central, alleging negligence. Later in this case, Illinois Central and Pinion filed a motion for summary judgment on the issue of the defendants' lack of negligence. This motion is not in the court papers, but is only referred to in the trial court's ruling.
The trial court ruled in favor of Pinion and Illinois Central on September 24, 1991. The court noted that from the evidence available it could not determine whether Minga was the driver, or a passenger. The court asserted such a determination was unnecessary to grant defendants a summary judgment. The court ruled that the evidence clearly established a lack of negligence on Pinion's and Illinois Central's part. The court alluded to Minga's or Hill's "inattention or negligence" as being the cause of the accident. The court did not expressly hold that Minga's or Hill's negligence was the cause of the accident.
From the trial court's ruling, Strantz filed her Notice of Appeal on September 24, 1991.

III. ANALYSIS

THE TRIAL COURT ERRED IN ITS GRANT OF SUMMARY JUDGMENT BECAUSE THERE WAS A GENUINE ISSUE OF MATERIAL FACT AS TO THE IDENTITY OF THE DRIVER OF THE TRUCK IN THIS ACCIDENT, AND AS TO THE NEGLIGENCE OF DEFENDANTS ILLINOIS CENTRAL AND PINION.
This Court employs a de novo review on grants of summary judgment. Owen v. Pringle, 621 So.2d 668, 670 (Miss. 1993). The trial court must review the evidence in a means most favorable to the nonmoving party. Sanford v. Federated Guaranty Ins. Co., 522 So.2d 214, 217 (Miss. 1988). After this review, only if the moving party "is entitled to summary judgment as a matter of law," the trial court should grant summary judgment. Sanford, 522 So.2d at 217.
There can be no issues of material fact. Stegall v. WTWV, Inc., 609 So.2d 348, 350-51 (Miss. 1992). A material fact is one which resolves any "of the issues, properly raised by the parties." Stegall, 609 So.2d at 351. If reasonable minds in a jury could differ on such an issue, summary judgment is improper. Id. Even without an issue of material fact present, the trial court should deny summary judgment where full presentation of the evidence would "result in a triable issue." Great Southern Nat'l Bank v. Minter, 590 So.2d 129, 135 (Miss. 1991).
The United States Supreme Court has provided guidance on summary judgment, through its interpretation of Federal Rule of Evidence 56. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202, 214 (1986). The Court has stated summary judgment is improper only where sufficient evidence exists for a reasonable jury to find for the plaintiff. Anderson, 477 U.S. at 252, 106 S.Ct. at 2512, 91 L.Ed.2d at 214. A mere scintilla of evidence for the plaintiff is insufficient. Id. Such a situation "necessarily implicates the substantive evidentiary standard of proof" applying at a "trial on the merits." Id. This Court has noted the Supreme Court's analysis of Fed. R.Civ.P. 56 "is persuasive" evidence of this *742 Court's interpretation of Miss.R.Civ.P. 56. Galloway v. Travelers Ins. Co., 515 So.2d 678, 683 (Miss. 1987).
This analysis is valuable in determining the correctness of the trial judge's decision here. In Mississippi law, the plaintiff must show duty, breach of duty, causation and damages. May v. V.F.W. Post # 2539, 577 So.2d 372, 375 (Miss. 1991). The plaintiff must show this under a preponderance of the evidence standard. May, 577 So.2d at 375. The plaintiff must demonstrate duty and breach of duty before any other elements. Id. Duty and breach "are essential" to a finding of negligence.[1]Id.
Turning to the facts, Strantz must demonstrate by a preponderance of the evidence a duty by Illinois Central to act as a reasonably prudent rail service, and show a breach of that duty.
The facts demonstrate that there was no genuine issue of material fact. Pinion, the conductor of the train, was the only witness to the movements of the truck. The engineer only saw the windshield of the truck shattering upon impact. Hill testified that he remembered nothing of the events leading to the accident. Willie Marsh, from his position in the second engine, the brakeman, did not observe the accident.
As a result, both sides discuss Pinion's testimony in an effort to prove, or refute, negligence in this case. Strantz argues that Pinion's testimony about the position of the truck when it began to suddenly accelerate is inaccurate. Strantz offers mathematical proof to demonstrate that Hill and Minga's truck could not have accelerated sufficiently to meet the train in a collision in the manner described.
However, Strantz offered no expert or lay testimony in the record to refute Pinion s testimony. An expert's mathematical illustrations of the inaccuracies in Pinion's observations would be evidence. An attorney's statements to this effect are allegations. Denials of fact, whether it "be in pleadings, briefs, or arguments," are insufficient to respond to a motion for summary judgment. Brown v. Credit Center, Inc., 444 So.2d 358, 364 (Miss. 1983). "Only sworn denials providing a credible basis" in evidence will suffice to create an issue of fact. Brown, 444 So.2d at 364. "Mere allegations" not demonstrating the presence of "detailed and precise facts" are insufficient to prevent summary judgment. Crystal Springs Ins. Agency, Inc. v. Commercial Union Ins. Co., 554 So.2d 884, 885 (Miss. 1989).
Strantz points out inconsistencies in Pinion's accident report, concerning Pinion's stating that the truck was traveling at 15 miles per hour before it began accelerating. Strantz notes that Pinion stated in his accident report that he did not know the truck's speed. However, Pinion clarified his inconsistency when he stated at deposition that he did not know the vehicle's speed at the time of the collision. He did note that the truck was traveling much faster than the 15 miles per hour it had previously traveled. Strantz's other alleged inconsistencies, such as Pinion's alleged failure to complete a part of the report, are immaterial to the issue of Pinion's negligence at the time of the accident.
Pinion's testimony is uncontroverted. The engineer's testimony supports Pinion as to the proper usage of the train's bells, whistles, and headlights. With no genuine issues of material fact present, the question becomes one of law. The question arises  do Pinion's actions as related through his testimony constitute his breach of duty as a reasonably prudent conductor?
The evidence demonstrates that it does not. Strantz argues that Pinion failed to keep a proper lookout. However, Pinion testified that he first observed the truck going 15 miles per hour several hundred feet from the crossing. After looking away to check his train, Pinion noted the truck still going at 15 miles per hour. Pinion observed the truck accelerate when it reached 150 feet *743 from the crossing. He noted that his train was 75 feet from the crossing.
Pinion stated he immediately called for emergency brakes, in a fruitless attempt to avoid the truck. Both Pinion and Foster later testified in an affidavit that there was no way to stop the train from colliding with the truck under these circumstances. Without rebutting lay or expert witness testimony, these facts are uncontroverted.
This Court has held in a similar case, under these circumstances, that the conductor and railroad company not negligent. Illinois Central R.R. v. Smith, 243 Miss. 766, 774, 140 So.2d 856, 859 (1962). In this case, the motorist drove his car in front of an Illinois Central train. Smith, 243 Miss. at 770, 140 So.2d at 857. As in this case, the plaintiffs in Smith charged negligence in the failure of the train crew to keep a proper lookout. Id., 243 Miss. at 771, 140 So.2d at 857. The Smith Court found no negligence present when the train operated its bells and whistles properly, and attempted to stop when the emergency arose, regardless of the outcome. Id., 243 Miss. at 771-74, 140 So.2d at 857-59. The Smith Court found that under these circumstances, the sole proximate cause of the accident was the plaintiff's negligence. Id., 243 Miss. at 774, 140 So.2d at 859.
This case features almost identical aspects with Smith. In addition, both occupants of the truck in this case had blood alcohol levels sufficient to render both legally intoxicated, as stated above. If anything, this case is more deserving of summary judgment than that of Smith.
Strantz also argues that there is a genuine issue of material fact in the identity of the driver. However, the true issue is the alleged negligence of the railroad. If the railroad is not negligent, then the identity of the driver is meaningless. Likewise, if the railroad is negligent, the identity of the driver is relevant only for purposes of comparative negligence, a matter not covered by this appeal. Although the evidence of who drove the truck is disputable, it is not material to the question of the defendant's negligence. Accordingly, it is not a material fact precluding summary judgment. Stegall v. WTWV, Inc., 609 So.2d 348, 351 (Miss. 1992).

CONCLUSION
In summary, there is no genuine issue of material fact. The conductor's testimony is uncontroverted by either expert or lay testimony. Pinion was the only witness to observe the entire accident. Furthermore, Pinion's testimony about the conduct of himself and his train crew, combined with his testimony about the truck's actions, demonstrate as a matter of law that the sole proximate cause of this accident was the fault of the plaintiffs. We find no merit to Strantz's argument presented this Court and therefore affirm the trial court's grant of summary judgment in favor of Illinois Central.
JUDGMENT AFFIRMED.
HAWKINS, C.J., PRATHER, P.J., and PITTMAN, BANKS and JAMES L. ROBERTS, Jr., JJ., concur.
McRAE, J., dissents with separate written opinion joined by DAN M. LEE, P.J., and SULLIVAN, J.
McRAE, Justice, dissenting:
The majority erroneously finds that there existed no genuine issue of material fact. Further, the majority states that the train conductor's testimony is unrefuted. I beg to differ. There is sufficient evidence for a reasonable juror to find that there existed some negligence on the part of the train conductor for failing to keep a proper lookout and that John Hill, rather than Sharon Minga, was the driver of the pick-up truck which collided with the train. Accordingly, I cannot agree with the decision to affirm the trial court's grant of summary judgment.
The majority correctly states that we review de novo grants of summary judgment and examine all evidence in a light most favorable to the non-moving party. Roussel v. Hutton, 638 So.2d 1305, 1314-15 (Miss. 1994); Pace v. Financial Security Life of Mississippi, 608 So.2d 1135, 1138 (Miss. 1992). Only when there is no genuine issue of material fact is a party entitled to summary judgment. Drummond v. Buckley, 627 *744 So.2d 264, 267 (Miss. 1993). If in doubt, we favor a trial. As the majority notes, if reasonable minds of a jury could differ on such an issue, summary judgment is improper. Skelton v. Twin County Rural Elec. Ass'n, 611 So.2d 931, 935 (Miss. 1992).
Mississippi law requires an engineer to maintain a proper lookout for vehicles approaching a railroad crossing. In Mississippi Central Railroad Co. v. Smith, 173 Miss. 507, 154 So. 533 (Miss. 1934), we held that such a duty does exist:
Appellant complains of an instruction for appellee telling the jury that it was the duty of the engineer in charge of its train "to keep a proper and reasonable lookout on approaching the crossing." This contention is without merit. Mobile & Ohio R. Co. v. Johnson, 165 Miss. 397, 141 So. 581; Mobile & Ohio R. Co. v. Bryant, 159 Miss. 528, 132 So. 539. It was held in those cases that an engineer in approaching a public crossing was required to keep a lookout within the right of way.
Smith, 173 Miss. at 524-25, 154 So. at 534. There definitely exists a question of whether the defendants maintained a proper lookout. The conductor, David Pinion, testified that the train proceeded through a thicket of trees approximately 900 feet north of the intersection where the accident took place. As the train was passing through the thicket, he observed the plaintiff's vehicle several hundred feet east of the crossing. At this point, Pinion was put on notice that the vehicle was nearing the crossing. Pinion testified that the train was traveling at a speed of thirty-two miles per hour and the pick-up truck was traveling at fifteen miles per hour. Instead of keeping watch over the truck's progress, he looked back at the train and then forward, failing to keep a proper lookout.
Several fertilizer tanks were located on the east side of the railroad tracks, north of the crossing. Pinion admitted that a couple of seconds elapsed during which he could not see over the fertilizer tanks. He further testified that when the train was just north of the fertilizer tanks, he looked back to check the train cars. When he saw the pickup truck again, it was some 150 feet from the crossing and had begun to accelerate. The train, by that time, was seventy-five feet from the crossing.
The majority states that Pinion's testimony is unrefuted. I disagree. Quite frankly, it is mathematically impossible for the train, traveling more than twice the speed of the vehicle, to have hit the backside of the vehicle as it did. Pinion's train traveled at thirty-two miles per hour, thus voyaging 46.9 feet per second. Since the train was seventy-five feet away from the crossing, it would have arrived at the crossing in 1.6 seconds. That being the case, Hill's vehicle, 150 feet away from the crossing, would have had to travel twice as fast as the train in order to have been hit in the rear. Clearly, a reasonable juror should be entitled to question or doubt whether a truck cruising at a speed of fifteen miles per hour could accelerate to such a speed as to actually reach the crossing before the train so as to create the resultant impact.
The defendant, David Pinion, conductor of the train, and Kenny Foster, the train's engineer, were in the lead engine. Foster testified that Pinion never mentioned the approach of a vehicle until he screamed to apply the brakes. In his deposition, Foster stated that the further away he is from a crossing, the better his vision is to the east and west of the crossing. He testified, "I could probably have seen it for 100 feet [sic] maybe or so." Thus, the question of whether Pinion should have applied the brakes sooner rather than looking back toward the train one more time was a question for the jury to determine, and not a matter of law as the majority contends.
It cannot be said that a reasonable juror would necessarily accept Pinion's testimony, especially when our standard of review requires that all evidence must be examined in a light most favorable to the non-moving party. In New Orleans & Northeastern Railroad Co. v. Shows, 240 Miss. 604, 128 So.2d 381 (1961), a factually similar wrongful death case, we held that, "[t]he jury had a right to believe that the engineer was not keeping a proper lookout, and we are of the opinion that this was a question for the jury." Shows, 128 So.2d at 382. In Slay v. Illinois *745 Central Gulf Railroad Co., 511 So.2d 875, 880 (Miss. 1987), we likewise stated:
[W]e have found that questions involving the engineer's alleged improper lookout, New Orleans & Northeastern Railroad Co. v. Shows, 240 Miss. 604, 608-09, 128 So.2d 381, 382 (1961); New Orleans & Northeastern Railroad Co. v. Lewis, 214 Miss. 163, 175, 58 So.2d 486, 491 (1952), failure to maintain the train at a safe speed, New Orleans & Northeastern Railroad Co. v. Burney, 248 Miss. 290, 310-11, 159 So.2d 85, 95 (1963); Yazoo & Mississippi Valley Railroad Co. v. Aultman, 179 Miss. 109, 119, 173 So. 280, 281 (1937); and failure to take proper precautions at an unusually dangerous crossing, Illinois Central Railroad Co. v. Williams, 242 Miss. 586, 595, 135 So.2d 831, 834 (1961), were for the jury or trier of fact.
In reviewing the record, we further find that there was a genuine issue of fact regarding who was driving the truck. John Hill, the survivor of the accident, testified that his girlfriend, Sharon Minga, was driving the vehicle at the time of the accident. On the other hand, Conductor Pinion testified that after the accident, Hill informed him that Minga was the passenger instead of the driver. The uniform accident report completed by the investigating officer declared Hill to be the driver of the vehicle. In fact, the majority admits that the question of who drove the truck is disputed. It, however, dismisses the issue by holding that it is not material to the question of the defendant's negligence. In a footnote, the trial judge stated that the "evidence is inconclusive as to whether Ms. Minga was driving the truck or was a passenger. Whether she was driver or passenger matters not at all to the disposition of the motion." The trial judge was incorrect in this statement because if there is even an infinitesimal amount of negligence on the driver's part, the passenger would have a cause of action against not only the railroad company, but also the driver of the truck.
I would reverse and remand for a trial since sufficient questions of fact were raised for a jury determination. Accordingly, I dissent.
DAN M. LEE, P.J., and SULLIVAN, J., join this opinion.
NOTES
[1] In this case, the parties have not argued causation and damages to a great extent. There is sufficient evidence in the record to demonstrate that the train collision did cause the death of Sharon Cox Minga. However, this discussion, tracking the parties, will focus on the defendants' duty and breach of duty.