GRIFFIS, P.J.,
for the Court:
¶ 1. Steven Jacob. Mahaffey. appeals the Forrest County Chancery Court’s decision, granting summary judgment in favor of William Carey University. This ease stems from William Carey’s dismissal of Mahaffey as a. student of the College of Osteopathic Medicine (COM). The chancellor found William Carey’s dismissal of Mahaffey was not arbitrary or capricious. We find no error and affirm.
*848 FACTS AND PROCEDURAL HISTORY
¶ 2. Mahaffey enrolled in the first class at William Carey’s COM in August 2010.
¶ 3. In September 2010, Mahaffey received his first verbal warning from Dr. Jim Weir, the associate dean for academic affairs, for inappropriate comments. In November 2010, Dr. Weir again verbally admonished Mahaffey, this time for sending improper emails to Dr. Darrell Lovins, the dean of the COM at the time, failing to perform his work in anatomy labs, and attempting to get professors to change his grades. At this time, Dr. Weir told Ma-haffey he had two strikes and a third strike would result in a review by the Promotion and Matriculation Committee (Committee).
¶ 4. Despite this warning, Mahaffey attempted to schedule his own rotations in contradiction to the COM’s policies. Dr. Michael Murphy, on January 9, 2011, told Mahaffey to cease any attempts to schedule his own rotations and to email Dean Lovins with any contacts and questions about rotations. Mahaffey, however, continued to try to schedule his own rotations.
¶5. Also around this time, Mahaffey tried to solicit private access to textbooks and materials from the COM’s e-book vendor. These two incidents were brought to the Committee’s attention on September 29, 2011. The Committee, however, chose not to take disciplinary action at that time, but asked Dr. Weir to advise Mahaffey of the Committee’s proceedings about him.
¶ 6. In November 2011, Mahaffey again tried to schedule his own rotation, this time with the Hattiesburg Clinic (Clinic). Then, on December 20, 2011, an incident occurred at the Clinic involving Mahaffey. Karen Smith, the director of nursing at the Clinic, reported that Mahaffey attempted to scrub into a surgery despite not having proper training in the scrubbing procedures or malpractice-insurance coverage. Smith rebuffed Mahaffey’s attempts to go into the surgery several times, until Ma-haffey allegedly went into the surgical suite and broke the sterile field. Mahaffey was then removed from the premises, and Jaime Hill, the rotations coordinator at the COM, was notified.
¶ 7. After receiving the report from the Clinic, Hill advised Dean Lovins and Dr. James Turner of the situation. As a result, Dr. Weir informed the Committee and told Mahaffey a hearing on the incident would occur. On January 5,2012, the Committee requested that Mahaffey attend the next Committee meeting. On January 6, 2012, Mahaffey met with Dr. Johnny Porter, chair of the Committee, to discuss his behavior and the pending Committee proceedings.
¶ 8. The Committee then met on January 10, 2012, with Mahaffey in attendance, and considered Mahaffey’s conduct. Ma-haffey responded to the Committee and sent a subsequent letter to the Committee. At the conclusion of the meeting, the Committee chose to place Mahaffey on probation.
¶ 9. On January 23, 2012, Dean Lovins met with Mahaffey to discuss the Committee’s findings and its recommendations. Dean Lovins sent a letter to Mahaffey on February 16, 2012, which stated he was on “probation with conditions” based on his unprofessional conduct and set out the four conditions of his probation. The conditions dictated that: (1) Mahaffey see a professional counselor to address authority issues and working within the medical team environment; (2) Dr. Turner would schedule all rotations for him; (3) he address any concerns regarding other institutions and his education at the COM with Dr. Turner; and (4) he meet with Dr. Weir monthly until August 2012 and thereafter with Dr. Turner. The letter further stated *849 that the “[failure to comply with any of these conditions will result in referral to the [Committee] for further discussion and recommendations.”
¶ 10. Notwithstanding these warnings and his probation, Mahaffey again attempted to schedule his own rotations. Further, in July 2012, the director of a medical boards preparation vendor reported to Dr. Turner that she received several harassing and inappropriate emails from Mahaffey. An additional incident occurred in August 2012 when Mahaffey attended an orientation at South Central Regional Medical Center during which he parked in the incorrect parking area and improperly used his cell phone during the orientation. On August. 8, 2012, Dean Lovins referred these incidences to the Committee for review.
¶ 11. On August 22, 2012, the Committee informed Mahaffey that, on August 29, the Committee intended to address his recent conduct. This meeting was can-celled due to a hurricane and to allow Mahaffey to take his boards. The Committee did not reschedule this meeting. At the March 26, 2013 meeting, the Committee reviewed Mahaffey’s status and decided to keep him on probation.
¶ 12. Also in March 2013, Mahaffey completed a pediatrics rotation with Dr. Christine Chard. At the conclusion of the rotation, Mahaffey turned in his logs to Dr. Chard for grading and an evaluation. Dr. Chard determined that his logs were inaccurate and believed they were falsified. Subsequently, Dr. Chard failed Mahaffey for the rotation based on his incorrect logs, Mahaffey’s interactions with the staff and herself, and one occasion when Mahaffey was told to wait in the doctor’s lounge before a procedure, but left the clinic instead.
¶ 13. The Committee once again evaluated Mahaffey’s conduct during these incidents at the April 17, 2013 meeting. The Committee recommended Mahaffey’s dismissal from the COM. On May 13, 2013, Dr. Porter forwarded the Committee’s recommendation including an affidavit from Dr. Chard addressing the log discrepancies to Dr. Turner, who at that time was the dean of the COM.
¶ 14. On May 16, 2013, Dr. Turner sent Mahaffey a letter notifying him of his dismissal from school based on “repeated acts of unprofessional behavior, and failure of the Pediatrics Rotation.” This letter stated he failed to meet the requirements of his probation and he could not appeal the decision. However, on May 23, 2013, Dr. Turner sent a second- letter to Mahaffey stating that the “dismissal can be appealed in accordance with the appropriate sections of the Student Handbook for 2012-2013 within 10 days[.]”
¶ 15. Mahaffey appealed the decision to Dr. Turner. Mahaffey submitted a seventy-two-page appeal letter to Dr. Turner and the Committee. A hearing was held before the Committee on June 25, 2013. Mahaffey appeared, addressed the Committee, and answered questions.
¶ 16. On July 1, 2013, Dr. Turner sent Mahaffey a letter notifying him that he had denied his appeal and upheld the Committee’s dismissal recommendation. Dr. Turner’s letter stated that the dismissal was based on “disciplinary issues.” The letter provided that “[ajfter due consideration and weighing all the issue[s] I find a pattern of unprofessional behavior that is not consistent with that expected of a graduate^]”
¶ 17. Mahaffey appealed the decision to Tommy King, the president of William Carey. Mahaffey submitted a letter in support of his appeal to President King. President King subsequently sent a letter to Mahaffey, which stated: “After hearing *850 your appeal and reviewing all information provided by you and the [COM], I dO' not find egregious errors on the part of the [the Committee] nor [Dr, Turner], that would warrant overturning their decision.”
■¶ 18. After this final dismissal decision, Mahaffey, on August 28, 2013, filed a lawsuit against William Carey in Forrest County Chancery Court challenging his expulsion as a breach of contract and seeking injunctive relief.
¶ 19. On March 3, 2014, William Carey filed a motion for summary judgment. Thereafter, Mahaffey filed a cross-motion for • summary judgment. • A hearing was held on March 21, 2014. The chancellor granted summary- judgment in favor of William Carey from the bench after hearing the arguments of the parties. In a written order issued on March 25, 2014, the chancellor found Mahaffey’s dismissal was neither arbitrary nor capricious. It is from this order that Mahaffey appeals.
STANDARD OF REVIEW
¶20. The Mississippi Supreme Court has held that:
Our appellate standard for reviewing the grant or denial of summary judgment is the same standard as that of the trial court under Rule 56(c) "of the: Mississippi Rules of - Civil Procedure. This Court employs á de novo standard of review of a lower court’s grant or denial of summary judgment and examines all the evidentiary matters before it — admissions in pleadings, answers to interrogatories, depositions, affidavits, etc. The evidence must be viewed in the light most favorable to the party against whom the motion has been made. If, in this view, there is no genuine issue of material fact and[ ] the moving party is entitled to judgment as a matter of law, summary judgment should forthwith be entered in his favor. Otherwise, the motion should be denied. Issues of fact sufficient to require denial of a motion for summary judgment obviously are present where one party swears to one version of the matter in issue and another says the opposite. In addition, the burden of demonstrating that no genuine issue of fact exists is on the moving party. That is, the non-movant should be given the benefit of the doubt.
Buchanan v. Ameristar Casino Vicksburg, Inc., 852 So.2d 25, 26 (¶ 3) (Miss.2003) (quoting Williamson ex rel. Williamson v. Keith, 786 So.2d 390, 393 (¶ 10) (Miss.2001)).
ANALYSIS
¶ 2!. Mahaffey asserted claims for a breach of contract and injunctive relief against William Carey. The chancellor granted summary judgment in favor of William Carey. ■ Mahaffey claims the chancellor erred because- there are disputes of material facts and the chancellor applied the wrong legal standard to find William Carey’s actions -were not arbitrary or capricious.

I. Whether Mahaffey proved a genuine issue of material fact existed to overcome William Carey’s motion for summary judgment.

¶22. Mahaffey first argues that the chancellor erred in granting summary judgment because genuine issues of material facts existed: William Carey contends, however, that Mahaffey is judicially estopped from presenting this argument because he previously asserted a list of undisputed facts in his cross-motion for summary judgment.
¶28. “A material fact is one which resolves any ‘of the issues, properly raised by t]ie parties.’ ” Suddith v. Univ. of S. Miss., 977 So.2d 1158, 1166 (¶ 9) *851 (Miss.Ct.App.2007) (quoting Strantg ex.rel. Minga v. Pinion, 652 So.2d 738, 741 (Miss.1995)). “Summary judgment may not be a substitute for trying, disputed factual issues.” Id. (citation omitted). “A fact is neither material nor genuinely contested, however, merely because one party, proclaims it so.” Id. at 1167 (¶ 10). .
¶24. Mahaffey presented several instances of disputed facts in both his opposition to William Carey’s.motion for summary judgment and his appellate briefs. The facts Mahaffey disputes, however, involve the incidents that William Carey deemed unprofessional. Mahaffey offered alternative explanations for .each event William Carey considered in its disciplinary actions. But Mahaffey fails to prove any dispute as to any material facts.
¶ 25.- The basis of Mahaffey’s lawsuit is that' William Carey acted in an arbitrary and capricious manner when the school dismissed Mahaffey. Thus, the action implicates the disciplinary actions taken by William Carey, not Mahaffey’s unprofessional conduct. As such, Mahaffey failed to demonstrate any disputed facts of William Carey’s disciplinary actions.
¶26. William Carey presented affidavits from several staff members involved in the disciplinary process. Dr. Weir’s affidavit stated he counseled Mahaffey on September 14, 2010, November 1, 2010, and January 14,2011, at the request of the Committee. Further, on October 20, 2011, the Committee warned Mahaffey of future action if his unprofessional conduct continued.
¶ 27. Dr. Turner, also through his affidavit, substantiated Dr. Weir’s meetings and further attested to the proceedings of the Committee. Drs. Weir and Turner also detail that the Committee met with Mahaffey on January 23, 2012, after which the COM placed Mahaffey on probation. Though Mahaffey disputes the warnings attested to by Drs. Weir and Turner, he does not challenge that the meeting occurred, or that he was placed on probation.
¶ 28. Mahaffey also failed to show disputed facts about the proceedings through his probation or. that.,he .was dismissed while he remained on probation. Mahaf-fey does argue that he did not violate the conditions of his probation, and even if he did, his probation did not mandate a dismissal for any violation. However, none of the facts Mahaffey calls into dispute resolve the question of whether William Carey’s decision was arbitrary or capricious.
¶29. Mahaffey does not dispute that the Committee met on April 17, 2013, and voted tu dismiss him from the COM, that the Committee allowed for an appeal to Dr. Turner, or that Mahaffey submitted a seventy-two-page appeal letter. Further, Mahaffey does not dispute that Dr. Turner and Dr. King both affirmed the Committee’s decision to dismiss him. Therefore, we find that Mahaffey failed to show a genuine issue of material'fact in dispute as to William Carey’s disciplinary actions that defeats surqmaiy judgment.
¶ 30. Because -we find that Mahaffey failed to show a genuine issue of material fact in dispute as to William Carey’s disciplinary. actions, we also find William Carey’s judicial-estoppel argument is moot. This issue is without merit.
77." Whether William Carey’s decision to dismiss Mahaffey. for unprofessional conduct was arbitrary or capricious.
¶31. The mnly issue1 that remains is whether William Carey’s decision was arbitrary or capricious. Mahaffey contends that William Carey failed to comply with its guidelines prescribed in the student handbook during its . proceedings against him. Due to this deviation from *852 procedures, Mahaffey argues William Carey deprived him of a fundamentally fair hearing, which renders the decision arbitrary or capricious.
¶ 32. “Courts have exercised reluctance in interfering with the disciplinary procedures and decisions of educational institutions, even where constitutional due process rights are guaranteed.” Beauchene v. Miss. Coll., 986 F.Supp.2d 755, 768 (S.D.Miss.2013). Because William Carey is a private institution, “causes of actions against [it] are usually limited to only breach of contract claims” rather than claims based on the protections afforded under the Fourteenth Amendment for students of public universities. Id. at 767-68. As such, “courts have given considerable discretion to private schools’ decisions.” Id. at 768.
¶33. Further, “[c]ourts have invoked different protections for disciplinary and academic expulsions.” Univ. of Miss. Med. Ctr. v. Hughes, 765 So.2d 528, 540 (¶ 41) (Miss.2000). “A disciplinary dismissal requires that the student be given oral or written notice of the charges and evidence against him and the opportunity to present his side of the story. In contrast, an academic dismissal calls for far less stringent procedural requirements.” Id. (internal citations and citations omitted).
¶ 34. Mahaffey contends that the chancellor applied the wrong standard when he found that William Carey did not have to follow its handbook guidelines so long as an “informal give-and-take” occurred. “[A] student dismissed for academic reasons is not entitled to any type of due process hearing, and all that is required for disciplinary actions is an ‘informal give-and-take’ between the student and the administrative body dismissing him that would, at least, give the student ‘the opportunity to characterize his conduct and put it in what he deems the proper context.’ ” Beauchene, 986 F.Supp.2d at 769 (quoting Senu-Oke v. Jackson State Univ., 521 F.Supp.2d 551, 559 (S.D.Miss.2007)).
¶ 35. Mahaffey is incorrect in his assertion that the “informal give-and-take” standard in Beauchene applies to academic dismissals rather than dismissals for unprofessional conduct. Beauchene quotes Senu-Oke for the “informal give-and-take” proposition. Id. In turn, the Senu-Oke court quoted the Fifth Circuit in Shaboon v. Duncan, 252 F.3d 722, 731 (5th Cir.2001). Senu-Oke, 521 F.Supp.2d at 559. Though Senu-Oke and Shaboon involved academic dismissals, both courts used the “informal give-and-take” language in the context of solely disciplinary actions. Senu-Oke, 521 F.Supp.2d at 559; Shaboon, 252 F.3d at 731. Therefore, the chancellor did not apply an incorrect standard.
¶ 36. Further, as previously stated, Beauchene, in citing Hughes, also indicated that only “oral or written notice of the charges and evidence against [the student] and the opportunity to present his side of the story” was required for a dismissal based on nonacademic misconduct. Beauchene, 986 F.Supp.2d at 768 (quoting Hughes, 765 So.2d at 540 (¶ 41)). Therefore, we must look to William Carey’s conduct to determine if it complied with these basic requirements so that the decision was neither arbitrary nor capricious.
¶ 37. In Beauchene, the trial court reviewed a student’s academic dismissal by a private law school to “determine whether [Mississippi College School of Law’s (MC Law)] procedures were carried out with fundamental fairness so as to ensure that the decisions rendered were not arbitrary and capricious.” Id. at 769. The trial court then defined the arbitrary and capri *853 cious standard as it applies to a private institution — “the [c]ourt may look to the degree in which MC Law deviated from its established procedures and whether there was substantial evidence to support its decisions.” Id.
¶ 38. Mahaffey contends that William Carey deviated from its set of disciplinary procedures in the student handbook, which rendered the decision arbitrary and capricious. The student handbook outlines the procedures for handling instances of student misconduct. The guidelines dictate that a complaint “should be filed with the chairperson of the [Committee,]” which the Committee reviews and decides whether to conduct a meeting or not. The guidelines then hold that if the Committee chooses to meet, the student shall be notified to appear and will be afforded the opportunity to address the allegations. Then the Committee can issue one of four decisions: no action, probation, probation with conditions, or dismissal. Mahaffey contends William Carey failed to comply with these specific procedures.
¶39. Mahaffey argues that no formal complaint was filed with the Committee and that he did not receive a notice or an opportunity to be heard at every meeting where the Committee discussed his actions. However, Mahaffey did receive notice of and did attend the Committee meeting on January 23, 2012, where he presented his version of events. After this meeting, the Committee placed Mahaffey on probation with conditions, which the Committee detailed in a February 16, 2012 letter. Further, when the Committee voted to dismiss Mahaffey on April 17, 2013, Mahaffey was allowed to appeal to Dr. Turner and to Dr. King. As part of his appeal, Mahaffey submitted a seventy-two-page letter detailing his version of events. All of these actions illustrate Williams Carey’s compliance with the handbook.
¶ 40. Despite this compliance, Mahaffey contends that he did not receive notice of either the April 17, 2013 meeting or that his probation with conditions could lead to his dismissal. The record, however, shows that Mahaffey knew that dismissal was a consequence for a violation of his probation. Though Mahaffey’s probation letter did not indicate dismissal was a possibility, the student handbook, on which Mahaffey heavily relies, states that “[probation is defined as a warning in that any future behavior/situations inconsistent with the professional behavior outlined in the WCU Student Handbook or deemed inappropriate by the [Committee] may result in [the student’s] immediate expulsionf.]” The handbook further states that probation with conditions “includes all of the sanctions of probation^]” Therefore, Mahaffey cannot claim he was not on notice that dismissal was a possibility for any probation violations.
¶ 41. As for the notice of the April 17, 2013 meeting, the record does not indicate that Mahaffey received a notice or attended the Committee meeting; However, the Beauchene court found that MC Law took some actions that deviated from its handbook, but that “the meetings and other communications between Beauchene and MC Law officials more than compensate^] for their minor deviations from the Student Honor Code’s written procedures.” Beauchene, 986 F.Supp.2d at 771. We find the same applies here.
¶ 42. The record indicates there were numerous emails, meetings, and conversations between Mahaffey and William Carey officials over the course of three years. William Carey placed Mahaffey on notice of his unprofessional conduct several times, and Mahaffey enjoyed several opportunities to defend himself. Therefore, we find William Carey carried out its pro *854 cedures with fundamental fairness to Ma-haffey.
¶ 43. Accordingly, we find William Carey’s slight deviation from the handbook guidelines to be inconsequential, and the substantial evidence supported William Carey’s decision. Based on these findings, William- Carey’s decision was neither arbitrary nor capricious. Thus, we affirm the chancellor’s decision.
¶ 44. THE JUDGMENT OF THE FORREST COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
IRVING,-PJ., BARNES, ISHEE, CARLTON, MAXWELL AND FAIR, JJ., CONCUR. WILSON, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. JAMES, J., DISSENTS WITH SEPARATE WRITTEN OPINION. LEE, C.J., NOT PARTICIPATING.